OPINION OF THE COURT
Gene L. Catena, J.
Petitioner, Kenneth Massop, an inmate at Clinton Correctional Facility, was charged with violating institutional rules numbered 102.10 threats and 101.20 exposing of body, following an incident which occurred on July 2, 1984, in Special Housing Unit No. 14 of the Clinton Correctional Facility. A Tier III superintendent’s proceeding resulted in petitioner being assigned to S.H.U. No. 14 for 60 days with loss of phone home program to run consecutively with any previous disposition. The disposition of the superintendent’s hearing was affirmed on August 23, 1984.
Petitioner, by this CPLR article 78 proceeding, seeks to reverse and annul the disposition of the underlying superintendent’s proceeding and to have any references and records of such proceeding expunged from his record. The court, after hearing oral argument, and upon a thorough examination of the papers submitted must grant the petitioner’s request.
*911 Petitioner asserted several legal claims against respondents in this article 78 review of the determination below. In our determination of the matter, the first and second legal claims and petitioner’s motion to strike sufficiently establish the basis upon which reversal and annulment should be granted.
Petitioner’s first legal claim asserted that respondents made a determination in violation of lawful procedure, imposed an unlawful and excessive punishment and violated petitioner’s due process rights. Petitioner argued that the Tier III superintendent’s hearing resulting in 60 days in S.H.U. No. 14 was improper because the underlying charges of which petitioner was accused called for a Tier I violation hearing or a Tier II disciplinary hearing with a maximum penalty of 30 days’ confinement. Respondents, citing Clinton Correctional Inmate rule 181.10 and 7 NYCRR 250.2, argue in their answer that a Tier III hearing was appropriate because petitioner’s past history of misbehavior warranted an elevation in the tier classification of the proceeding. In order to establish petitioner’s prior conduct, respondents submitted petitioner’s inmate record card as “Exhibit B.” Petitioner thereupon made a motion to strike the inmate record card as immaterial, irrelevant, highly prejudicial, raising new matter outside the administrative record and therefore not properly before the court.
The court herein grants petitioner’s motion to strike and finds that petitioner’s first legal claim has merit for the following reasons. Petitioner was never given notice of violating rule 181.10. In fact, the court finds that respondents’ answer in this proceeding provided the first indication that rule 181.10 was the basis upon which the proceedings were elevated to the Tier III superintendent’s hearing. The court, citing Wolff v McDonnell (418 US 539 [1974]), Sostre v McGinnis (442 F2d 178 [2d Cir 1971]) and its progeny, finds that the constitutional entitlement of petitioner to adequate notice of the charges in a prison disciplinary action has been long established. The court also notes that the New York Code of Rules and Regulations has incorporated the notice requirement into regulations governing disciplinary proceedings by requiring that the misbehavior report shall consist of a written specification of the particulars of the alleged incident, a description of the violated rule and a reference to the inmate rule book numbers allegedly violated (see, 7 NYCRR 251-3.1.) Upon examination of the record, the court finds that respondents failed to give petitioner such notice that the proceedings against him would be elevated to a Tier III proceeding based upon the alleged violation of rule 181.10. Therefore, the punishment of 60 days’ confinement in S.H.U. *912 No. 14 was excessive, as the maximum penalty for the charges of which he was given notice was only 30 days.
Furthermore, respondents’ “Exhibit B” represents evidence outside the record being reviewed. In this case, the inmate’s record card was not part of the hearing record and was not available to the hearing officer at the Tier III hearing at the time of his determination. As such it should not be considered upon review of the determination below. The insufficiencies in the conduct of the dispositional hearing may not later be corrected or changed by information not utilized “since judicial review of an agency determination is * * * limited to the record before the agency”. (Matter of Jennings v Coughlin, 99 AD2d 635, 636 [3d Dept 1984]; Matter of Lugo v Gaines, 83 AD2d 542, 543 [1st Dept 1981].) The court is well aware that the “seriousness of the present offense and the violator’s past record are valid considerations in assessing punishment”, by the hearing officer at the time guilt is found and punishment is imposed. (Matter of Guzman v Coughlin, 90 AD2d 666 [3d Dept 1982].) But where, as in petitioner’s case, the penalty imposed is elevated by elevating the tier classification of the hearing itself without notice thereof, the court cannot allow a postdetermination introduction of rule violations to validate an improperly imposed penalty.
The second legal claim consisted of petitioner’s due process rights to present witnesses and/or documentary evidence in disciplinary or superintendent’s proceeding as per 7 NYCRR 253.5, 254.5. This court finds that petitioner’s rights were violated when the hearing officer refused to view and listen to the audio/videotape recording of the events in S.H.U. No. 14 on the day of the alleged incident, based upon the following considerations.
Petitioner asserted that inmates have a constitutional due process right to call witnesses at a prison disciplinary proceeding. (Wolff v McDonnell, supra; McCann v Coughlin, 698 F2d 112 [2d Cir 1983]; Powell v Ward, 392 F Supp 628, mod on other grounds and affd 542 F2d 101 [2d Cir 1976]; Powell v Ward, 487 F Supp 917, mod on other grounds 643 F2d 924 [2d Cir 1981]; Matter of Tolden v Coughlin, 90 AD2d 929 [3d Dept 1982].) 7 NYCRR 254.5 specifically provides that in a superintendent’s hearing an inmate may call witnesses on his behalf provided that in doing so he does not jeopardize institutional safety or correctional goals. Subdivision (c) of this section provides that
“An inmate may request a witness by either:
*913 “(1) informing his assistant or the hearing officer before the hearing; or
“(2) informing the hearing officer during the hearing.” Petitioner in this matter sought to use the audio/videotape as his witness in an effort to exonerate himself of the charges. The central factual question in the hearing below was whether petitioner was or was not provoked into violating the institutional rules. Since the only proof available to substantiate the petitioner’s version of the incident was the audio/videotape, the hearing officer should have viewed it as petitioner’s witness. Petitioner asserted that he made this request both prior to and at the superintendent’s proceeding. The record reveals that his request at the Tier III proceeding was denied.
Petitioner also asserted that pursuant to an agreement in Inmates of Unit 14 v Correctional Officers (US Dist Ct, NDNY), all videotapes from Unit 14 are to be retained by Clinton Correctional Facility authorities for a minimum period of 30 days. Therefore, respondents’ affirmative defense to the claim that no duty was enjoined by law upon them to turn over videotapes at a tier hearing is without merit. This finding is further substantiated by the court’s holding in Bonds v LeFevre (Sup Ct, Spec Term, Clinton County, Feb. 26,1981). Citing the Honorable Edmund L. Shea in Bonds v LeFevre, petitioner argued that the hearing officer’s failure “to consider the videotape which may have shown what transpired in the underlying incident * * * violated petitioner’s right to due process.”
In Bonds (supra), as in our case, “Respondent’s answer rests primarily on the argument that petitioner has no right to have a tape shown at his hearing and that neither case or statutory law nor departmental regulations require that such a tape be shown.” Relying upon and agreeing with Judge Shea’s determination, the court in Bonds went on to say:
“While this position may be true in the literal sense that it is nowhere written that available videotapes must be considered in superintendent’s proceedings, such a reading of the applicable law and precedents is startlingly, if not shockingly narrow * * *
“Apparently the only witnesses to the altercation in issue were the guards, the inmate and the normally unblinking, unimpeachable eye of the camera. It was this latter ‘witness’ that the petitioner relied upon in his behalf * * * [Where] the version of the incident presented by the guards is diametrically opposed to that presented by the inmate * * * it was incumbent upon the hearing officer to consider whatever the videotape showed or did not show.
*914 “In these circumstances, the failure of the hearing officer to consider the videotape which may have shown what transpired in the underlining incident * * * violated the petitioner’s right to due process.”
Since petitioner’s second and third legal claims are closely related, a brief discussion of the third legal claim is in order. 7 NYCRR 254.5 provides that if the hearing officer denies an inmate his right to call a witness, he shall provide the inmate with a written statement stating the reasons for the denial. Respondents’ failure to do so amounted to respondents’ failure to perform a duty enjoined upon them by law and therefore petitioner was denied his due process rights.
In view of this court’s determination of the due process issues presented, the court does not address the issues raised in petitioner’s fourth legal claim.
Accordingly, the superintendent’s determination is reversed and annulled and all references to the superintendent’s proceedings and the records upon which it was based shall be expunged from petitioner’s institutional and departmental files.