**Abdel–Jabbor MALIK, Plaintiff,**

v.

**Captain TANNER, Defendant.**

**87 CIV. 5740 (SWK).**

United States District Court,
S.D. New York.

Oct. 7, 1988.

Abdel–Jabbor Malik, Attica, N.Y., pro se.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City by Douglas D. Aronin, Asst. Atty. Gen., for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff, a state prisoner, brings this civil rights action pursuant to 42 U.S.C. § 1983 and seeks compensatory and punitive damages. Plaintiff has, at various times over the past year, filed applications for injunctive relief against officers at Green Haven Correctional Facility, where he is incarcerated, though these officers are not named as defendants. This Court referred the matter to Magistrate Naomi Reice Buchwald for all purposes on September 15, 1987. The Magistrate denied a request for appointment of counsel, but granted plaintiff's request to amend his complaint. Malik subsequently filed an amended complaint adding factual details.

At approximately the same time, the Magistrate issued a Report and Recommendation which recommended the dismissal of plaintiff's application for preliminary injunctive relief against Green Haven correctional officers who allegedly were intimidating plaintiff and poisoning his food. The Court adopted the Magistrate's opinion, dismissing the application as moot since plaintiff had been moved to another correctional facility. Thereafter, plaintiff notified the Court that he had been transferred back to Green Haven and that the food contamination by prison officers had resumed. By Order dated March 18, 1988,

the Court remanded the application for injunctive relief to the Magistrate for reconsideration.

In the meantime, each party moved for summary judgment pursuant to Fed.R.Civ. P. 56. On April 15, 1988, Magistrate Buchwald issued a Report and Recommendation in which she recommended that summary judgment be granted defendant on all claims. She also recommended that plaintiff's application for injunctive relief be denied. Plaintiff filed objections to aspects of the Report pursuant to Fed.R.Civ.P. 72 and 28 U.S.C. § 636, and the Court will consider *de novo* the aspects of the Report to which plaintiff has objected. Plaintiff has also submitted another request for injunctive relief against various correction officers at Green Haven.

## BACKGROUND

■ Plaintiff's complaint makes two general allegations. First, plaintiff claims that Captain Tanner violated his due process rights under the Fourteenth Amendment to the United States Constitution by holding a disciplinary hearing in his absence and by failing to make any effort to obtain plaintiff's testimony. Second, plaintiff claims that the imposition of a restricted diet comprised of a special bread loaf and raw cabbage violated his constitutional rights.[1]

The undisputed facts appear to be the following, except as noted. Defendant Joseph Tanner is a captain of correction officers for the New York State Department of Correctional Services and is assigned to the Green Haven Correction Facility. Plaintiff was incarcerated at the prison in the spring and summer of 1987, and is currently incarcerated there. On February 26, 1987, plaintiff was served with an "Inmate Misbehavior Report" for allegedly violating prison rules on that date. Plaintiff was accused of making threats, refusing to

obey a direct order and committing an unhygienic act. The Report states that at approximately 11:15 A.M. on February 26, 1987, plaintiff ordered corrections officer D. Pickett to tell the sergeant that plaintiff wanted to see him "or I will get physical". *See* Exh. A to Affidavit of Joseph Tanner ("Tanner Aff."). Malik allegedly continued to shout as officer Pickett went to talk to Sergeant Juckacwicz. *Id.* While talking with the sergeant, one of the monitors called and said that Malik had put a sheet over the bars to his cell, completely blocking the view into the cell. The sergeant then instructed officer Pickett and officer Boulanger to have Malik remove the sheet. *Id.* The two officers went to Malik's cell and told him to remove the sheet. Malik allegedly responded: "Try and take it down mother fucker." *Id.* As the officers attempted to pull the sheet down, Malik allegedly grabbed the sheet, became irate and began spitting at the officers. The sergeant then arrived and apparently was able to resolve the situation. *Id.*

On March 3, 1987, defendant conducted a Tier III Superintendent's Proceeding for the purpose of considering the charges brought against Malik in the February 26th Inmate Misbehavior Report. Tanner Aff. at ¶ 4. Tanner states that formal charges were prepared and served on plaintiff more than 24 hours prior to the hearing and that plaintiff was provided the opportunity to choose an employee assistant pursuant to New York correctional rules and regulations. Plaintiff appears to have refused the help of the assistant, a Sergeant Lowery. *Id.; see* Exh. C to Tanner Aff. Tanner prepared a "Witness Interview" form, which is apparently used to notify an inmate that "the calling of a witness or the review of a witness's testimony would jeopardize Institutional safety or Correctional goals", in which he stated: "Inmate Ma-

---

1. Plaintiff characterized the diet as a deprivation of his property rights without due process. Characterized as such, even if a prisoner has property rights in the food served to the general prison population, the Constitution is not violated if the claimed property right was deprived with due process. The plaintiff's two claims

thus collapse into one, requiring the Court to determine whether the disciplinary hearing as conducted comported with due process. Both the State and the Magistrate considered plaintiff's restricted diet claim as one sounding in the Eighth Amendment, and the Court will consider it similarly.

lik's behavior precluded him being present at Hearing (sic) therefore he could not listen To Testimony (sic) of the witnesses called". *See* Exh. D to Tanner Aff. Tanner signed the form, which was dated March 3, 1987, in the space designated "Hearing Officer" and wrote "Inmate not at hearing to sign" in the space designated "Inmate Signature". *Id.* In the "Hearing Record Sheet", Tanner noted the date and time of the incident, the name of the person serving the formal charges, and the date and time served. *Id.* He noted that the inmate refused assistance, listed the charges and indicated in the space for the inmate's signature that inmate Malik was not at the hearing due to his behavior in the Special Housing Unit. The sheet indicates that no witnesses were called by the inmate, and notes in the margin that the inmate was not present due to his behavior. *Id.* Although plaintiff was not allowed to attend the disciplinary hearing, which was electronically recorded, plaintiff did receive a written copy of the disposition of the hearing. Tanner Aff. at ¶ 7. This "Superintendent's Hearing Disposition Rendered" listed the evidence relied upon—the testimony of officers Pickett and Boulanger—and reasons for the penalty imposed—plaintiff's long record of misbehavior. *See* Exh. F to Tanner Aff.

Plaintiff states that he did not know the hearing was to be conducted in his absence until after it was completed. Objections to Report and Recommendation ("Objections") at p. 11.[2] Plaintiff claims that he intended to inform Tanner, the hearing officer, that he wanted to call inmate witnesses in his own defense. *Id.* at p. 10. He also planned to ask defendant to review a videotape of the incident that plaintiff claims would have exonerated him. *Id.* at p. 11. Finally, plaintiff states that he either did prepare or intended to prepare a written testimonial concerning the incident and the charges.[3] *Id.* Plaintiff suggests that neither defendant or any other officer attempted to obtain information regarding the incident from plaintiff.[4]

Plaintiff appealed the disposition to the Departmental Review Board, which affirmed the defendant's decision. *See* Exh. B to Affidavit of Ronald Turbin ("Turbin Aff."). Plaintiff subsequently filed an Article 78 proceeding in New York Supreme Court in response to which Donald Selsky, Director of the Special Housing/Inmate Disciplinary Program, annulled the Superintendent's Proceeding and expunged it from plaintiff's record.[5]

Tanner imposed a penalty of fifteen days on a restricted diet of special loaf and raw cabbage. Charles Scully, superintendent of the prison, approved the diet on March 4, 1987, in a memorandum to Dr. S. Rosenbloom, Chief of Medical Services at Green Haven. *See* Exh. C to Tanner Aff. Tanner asserts in his affidavit that the prison followed each of the administrative regulations concerning restricted diets in Malik's case. Tanner Aff. at ¶ 10. Tanner states that a physician, nurse or physician's assistant examined plaintiff each day during the duration of the restricted diet, and pertinent information was recorded in a log

---

2. Although Malik made these statements in his objections, as opposed to an affidavit, at the end of the objections he swears under the penalties of perjury that the contents are true and are made in good faith. For the purposes of this motion, the Court will give the statements the same weight as if made in an affidavit. The pagination of plaintiff's objections was done by the Court. The Objections, filed with the Court on May 13, 1988, are listed as item number 18 on the docket sheet.

3. The meaning of plaintiff's exact language is unclear: "... also Plaintiff Malik to back it all up is a documentary written out text speech ..."

4. Plaintiff states: "... he woulder (sic) ither (sic) had a subordinate or himself come to Plaintiff Malik cell and ask him do he has an affirmative defense to the misbehavior report ... but the defendant Captain Tanner did not on his own volution (sic)."

5. Though the Court has not been provided with a copy of the reversal by Selsky, plaintiff has produced what purports to be a copy of the letter in plaintiff's own handwriting. The letter simply states in relevant part: "Please be advised that in view of information received from Assistant Attorney General Michael Timm, I will administratively reverse the hearing ..." *See* Exh. A to Plaintiff's Objections.

book maintained at the prison.[6] *Id.*

## DISCUSSION

### *Magistrate Buchwald's Conclusions*

The Magistrate determined that plaintiff's claim for monetary damages against Captain Tanner for violations of due process was in effect an action against the state for retroactive monetary damages, an action prohibited by the Eleventh Amendment and case law interpreting it. The Magistrate reasoned that since defendant acted in accordance with New York state regulations and Corrections Department directives, the action could only be against him in his official capacity, and as such would require that any judgment be paid out of state funds. *See Jones v. Smith,* 784 F.2d 149, 152 (2d Cir.1986) (suit against prison superintendent barred by Eleventh Amendment since defendant acted in accordance with state policy, thus making the action one against the state); *Dwyer v. Regan,* 777 F.2d 825, 835 (2d Cir.1985) (suits for monetary awards out of state funds are barred by Eleventh Amendment), *modified on other grounds,* 793 F.2d 457 (2d Cir.1986). The Magistrate also concluded that while material issues of fact remained in dispute regarding the Eighth Amendment claim, summary judgment was appropriate since defendant had qualified immunity for his actions.

■ Plaintiff objects first that the Eleventh Amendment does not preclude the recovery of punitive damages against the state. This assertion is simply incorrect since any retrospective claims against the state for monetary award are barred by the Eleventh Amendment, and punitive damages like compensatory damages would be recovered from the state treasury. Plaintiff also maintains, however, that defendant violated state regulations, the violation of which denied him due process. Plaintiff contends in addition that the action seeks damages from defendant personally. Finally, plaintiff takes issue with the Magistrate's conclusions regarding the imposition

of the restricted diet. The Court will consider each of these contentions in turn.

### *Standards for Summary Judgment*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Rule 56(e). Conclusory allegations and mere denials are not enough to raise genuine issues of fact. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Any factual disputes must be material—that is, must be ones that would affect the outcome—and genuine—that is, must be ones that have sufficient support in the record so that a jury could return a verdict in that party's favor. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

### *Compliance with State Regulations*

■ Plaintiff claims that defendant acted beyond the scope of his authority under New York law by excluding him from the disciplinary hearing and by preventing him from presenting an affirmative defense or rebuttal evidence. Plaintiff argues that he was denied his right to an impartial hearing officer since Tanner only listened to the

---

**6.** Copies of the relevant entries have not been provided.

officers' version of the facts and did not seek out plaintiff's testimony or evidence. Plaintiff places great weight in the administrative reversal of the March 3d proceeding, but the effect of that reversal is inconclusive on Tanner's liability for any unauthorized conduct in violation of plaintiff's due process rights since the reversal did not state any reasons for the action. Defendant claims that he followed all the regulations and did not deny plaintiff any rights secured by the Constitution.

New York regulations grant a comprehensive set of rights to inmates who are subjected to a superintendent's hearing. *See generally Pino v. Dalsheim, supra,* 605 F.Supp. 1305 at 1314 (S.D.N.Y.1984); *People ex rel. Vega v. Smith,* 66 N.Y.2d 130, 495 N.Y.S.2d 332, 337, 485 N.E.2d 997, 1002 (1985). Included is the right to call witnesses, but such a right may be denied if calling witnesses would "jeopardize institutional safety or correctional goals." 7 NYCRR § 254.5. An inmate may request a witness by either informing the appointed assistant or the hearing officer prior to the hearing, or by making the request at the hearing itself. *Id.,* § 254.5(c). If a request to call a witness is denied, a written explanation must be given the inmate. *Id.* New York regulations also state that the "inmate shall be present at the hearing unless he refuses to attend, or is excluded for reason of institutional safety or correctional goals. The entire hearing must be electronically recorded." 7 NYCRR § 254.6(b). These regulations also state that the "inmate when present may reply orally to the charge and/or evidence and shall be allowed to submit relevant documentary evidence or written statements on his behalf." *Id.,* § 254.6(c).

The undisputed facts indicate to the Court that defendant did not specifically violate any of these regulations. To the contrary, defendant appears to have scrupulously followed the letter of the regula-

tions. Formal charges were presented, plaintiff was given the opportunity to have an assistant, though maybe not one of his own choosing, the hearing was electronically recorded and plaintiff received written notice of the disposition. Defendant did not violate § 254.5(c), which concerns inmate witnesses, since the regulation only states how an inmate may request witnesses and does not specifically require the hearing officer to ask the inmate whether he has any witnesses.[7] Since Malik apparently did not inform defendant of his witnesses prior to the hearing and was not at the hearing to inform defendant at that time, this provision was not violated, at least when the regulation is read literally.

Furthermore, these regulations do not grant an inmate the right to be present at a hearing if the hearing officer determines reasonably that his presence will endanger institutional safety or correctional goals. *Cf. Boodro v. Coughlin,* App.Div., 530 N.Y.S.2d 337, 339 (3d Dept.1988). Defendant's decision to exclude plaintiff appears reasonable given plaintiff's long history of behavioral problems. Tanner Aff. at ¶¶ 5, 11. Plaintiff threatened not to return to his cell if let out, threatened prison personnel and destroyed prison mattresses. *Id.* Plaintiff was excluded because defendant determined that plaintiff posed a threat to institutional safety or correctional goals. Thus, defendant did not violate § 254.6(b). Defendant also did not violate § 254.6(c), which allows for oral testimony or submission of documentary evidence when the inmate is present, since plaintiff was not present.

For these reasons, the Court agrees with the Magistrate that defendant acted in accordance with state regulations. The Magistrate, following the *Jones* decision, *see Jones, supra,* 784 F.2d at 152, concluded that any action against defendant must be against him in his official capacity, and that as such, the Eleventh Amendment

---

7. Had plaintiff informed defendant prior to the hearing that plaintiff wanted to call inmate witnesses or to present the videotape of the cell block at the time of the incident, defendant's refusal to consider such evidence would violate state law and due process. *See Nowlin v. Scully,* 137 Misc.2d 446, 521 N.Y.S.2d 206, 207 (Supr. 1987) (refusal to call inmate witnesses violates state law and due process); *Massop v. LeFevre,* 127 Misc.2d 910, 487 N.Y.S.2d 925, 928 (1988) (refusal to consider videotape as requested by inmate violated state regulations).

bars this action for retrospective monetary relief against the state. *Id.; see also Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985) (distinguishing personal-capacity suits from official-capacity suits). This Court agrees that any action against defendant in his official capacity is barred by the Eleventh Amendment.[8] Plaintiff argues, however, that the action was against defendant in his personal capacity as well. The Court must determine, therefore, whether defendant—in his personal capacity—violated any rights secured by the due process clause, and if so, whether he is entitled to qualified immunity.

*Federal Due Process Requirements*

■ To establish personal liability under § 1983, plaintiff must prove that defendant caused the deprivation of a federal right while acting under color of state law. *Kentucky v. Graham, supra,* 473 U.S. at 166, 105 S.Ct. at 3105.[9] Prisoners enjoy the right not to be deprived of life, liberty or property without due process of law,[10] but their rights are to be balanced with, and often tempered by, the needs of their special institutional setting. *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). Prisoners subject to disciplinary hearings do not enjoy the full panoply of procedural rights accorded defendants in criminal trials since these hearings are not viewed as "criminal" in nature. *Id.* At a minimum, the due process requirements for prisoner disciplinary hearings are: (1) advance written notice of the charges, received at least 24 hours before the hearing, (2) a written statement of findings of fact as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) the opportunity to appear, call witnesses and present documentary evidence, unless doing so would be unduly hazardous to institutional safety or correctional goals. *Freeman v. Rideout,* 808 F.2d 949, 953 (2d Cir.1986) (citing *Wolff, supra,* 418 U.S. at 563–66, 94 S.Ct. at 2978–80), *cert. denied,* —— U.S. ——, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988). More recent cases have established that members of the disciplinary committee must be fair and impartial and

---

**8.** The *Jones* Court appears to have collapsed the qualified immunity argument into the immunity provided by the Eleventh Amendment. In *Jones,* the Second Circuit reasoned that since the defendant had complied with an existing state policy, his actions were not the random and unauthorized acts considered in *Parratt v. Taylor,* 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981), in which the Supreme Court held that an inmate could not bring a § 1983 action against prison officials for their unauthorized acts if an adequate post-deprivation remedy, such as a common law tort action, existed. Thus, the Second Circuit concluded that defendant's actions must be those of the state, for which the Eleventh Amendment provides immunity. *Jones, supra,* 784 F.2d at 152.

Under a narrow reading of *Jones,* an inmate can never sue a prison official for money damages under § 1983 in federal court. If, on the one hand, the official's actions are unauthorized, then the inmate must use the state's post-deprivation mechanism. If, on the other hand, the official's actions were authorized, then the inmate's action is barred by the Eleventh Amendment. As the case before the Court demonstrates, there may be times when a prison official acts fully in accordance with state law, but nevertheless violates the U.S. Constitution. The logic of the *Jones* case would prevent federal courts from considering personal-capacity suits.

The language in *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985), upon which the *Jones* Court relied, states that "implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State." (citing *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). This Court does not read that language to mean that a state official acting in accordance with state policy can never be sued in his personal capacity under § 1983 for violations of constitutional rights. Indeed, the *Graham* Court concluded that the action against certain state officers must have been against them in their personal capacity since the Eleventh Amendment would have barred the action if it were against them in their official capacity. 473 U.S. at 168, 105 S.Ct. at 3106.

**9.** Defendant does not contest that he was acting under color of state law, only that he did not cause the deprivation of any federal rights.

**10.** The Court assumes, and no party has challenged the assumption, that plaintiff has a protected life, liberty or property interest in not being placed on a restricted diet for disciplinary reasons without due process of law.

that the right of an inmate to call witnesses is mandatory, subject to a narrow exception allowing exclusion when calling the witness would jeopardize institutional safety. *Pino v. Dalsheim,* 605 F.Supp. 1305, 1314 (S.D.N.Y.1984) (citing *McCann v. Coughlin,* 698 F.2d 112, 122 (2d Cir.1983)).

In its paraphrase of the minimal due process rights available to prisoners established by the *Wolff* Court, the Second Circuit included a prisoner's right "to appear at the hearing, ..." *Freeman, supra,* 808 F.2d at 953.[11] Other courts have read *Wolff* to mean that one of the due process rights held by prisoners is the right to appear before the decision-making body. *See, e.g., Finney v. Mabry,* 528 F.Supp. 567, 574 (E.D.Ark.1981); *Wright v. Enomoto,* 462 F.Supp. 397, 403 (N.D.Cal.1976), *cert. denied,* 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978). The presence of the inmate at the hearing appears to be an implicit requirement of the notice requirement. In rejecting Nebraska's practice of notifying an inmate of the charges at the hearing itself and requiring 24–hour advance written notice, the Supreme Court reasoned that "[p]art of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact ... At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [hearing body]." *Wolff, supra,* 418 U.S. at 564, 94 S.Ct. at 2978. The Court concludes that an inmate's presence at a disciplinary hearing is one of the minimal elements of process due a prisoner.

▪ The Court is not unmindful of the special exigencies that exist in the prison community and the potential for disruption that a prisoner's presence may engender. Certain exceptions to due process requirements reflect the particular needs of the

prison setting in avoiding disruption, meting out swift punishment for rule violations and the avoidance of havoc within the prison walls. *See Baxter, supra,* 425 U.S. at 321, 96 S.Ct. at 1559. For example, the due process clause allows a hearing officer to receive testimony outside the presence of the inmate charged with a rule violation. *Bolden v. Alston,* 810 F.2d 353, 358 (2d Cir.1987) (taking of testimony outside of inmate's presence did not violate due process in context of recorded and transcribed hearing) (citing *Baxter v. Palmigiano,* 425 U.S. 308, 321–22, 96 S.Ct. 1551, 1559–60, 47 L.Ed.2d 810 (1976), *cert. denied,* —— U.S. ——, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987)). Subject to the discretion of prison officials, an inmate may be denied the right to confront adverse witnesses and to cross-examine them. *Baxter, supra,* 425 U.S. at 321, 96 S.Ct. at 1559; *Wolff, supra,* 418 U.S. at 568, 94 S.Ct. at 2980. For this reason, the Court believes that a prisoner may be excluded from a hearing if the hearing officer reasonably concludes that his presence would unduly threaten institutional safety or undermine correctional goals. The Court cautions, however, that the circumstances justifying exclusion must remain narrow.[12]

▪ The Court also concludes, however, that due process requires the hearing officer to attempt in good faith to consider the inmate's version when the inmate is reasonably and properly excluded. Due process requirements ultimately concern the avoidance of arbitrary governmental action and fundamental fairness. *See Wolff, supra,* 418 U.S. at 558, 94 S.Ct. at 2976 ("The touchstone of due process is protection of the individual against arbitrary action of government ..."). While it does not violate due process for a prison official to conduct the disciplinary hearing, to interview witnesses outside the inmate's

---

**11.** The *Wolff* Court did not specifically mention a prisoner's right to appear at a hearing. *See* 418 U.S. at 564–66, 94 S.Ct. at 2978–80 (the pages cited by the Second Circuit). The Second Circuit may have believed, as this Court does, *see infra,* that a prisoner's presence at the hearing was implicit in the Supreme Court's discussion of the notice requirements.

**12.** Since *witnesses* must be excluded in only the "unusual" case, *see McCann, supra,* 698 F.2d at 123, *a fortiori* the exclusion of the inmate who is subject to the hearing must occur only in the unusual circumstance.

presence, to act as fact-finder and then to pass judgment, *Bolden, supra,* 810 F.2d at 358, the hearing process may become meaningless if the inmate can be excluded and no effort is made to secure his version of the incident. "The fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.'" *Parratt v. Taylor,* 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). The officer conducting the hearing should consider the inmate's version of the incident, either by interviewing the inmate, by receiving written testimony of the inmate, by listening to the inmate's representative or possibly reviewing a videotape of the inmate's testimony, if feasible. *See Pino, supra,* 605 F.Supp. at 1318 ("the failure of the official conducting the Superintendent's Proceeding to consider in good faith the substance of the inmate's defense extends the mockery of due process ..."). The state regulations are unconstitutional to the extent that they allow a disciplinary hearing to be conducted without making a reasonable, good faith attempt to consider the inmate's version of the facts.

▇ It is clear from the undisputed facts of this case that plaintiff was not allowed to attend the hearing, listen to the testimony, call witnesses, produce documentary evidence or testify on his own behalf. He was given the opportunity to select an assistant, but refused the choice of Sergeant Lowery. The circumstances surrounding this choice of an assistant and plaintiff's refusal are not reflected in the record.[13] Defendant did not consider nor did he make a meaningful attempt to garner plaintiff's version of the facts. Plaintiff states in his objections that he wanted to present his own testimony, either in person or in writing, and that he wanted a videotape of the incident to be played back as part of his defense. He also states that he did not learn that the hearing was to be conducted in his absence until after the proceedings were completed. Plaintiff thus did not waive his presence. Accordingly, the hearing as conducted violated the process due in not providing plaintiff with a meaningful opportunity to present a defense in a disciplinary hearing.

▇ The Court also believes, however, that defendant is protected by what has become known as qualified immunity. As Magistrate Buchwald stated in her Report, the "doctrine of qualified immunity precludes a finding of liability when a government official performing discretionary functions can establish that it was objectively reasonable for him to believe that his conduct did not violate plaintiff's clearly established statutory or constitutional rights." Report at p. 12 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Whether qualified immunity applies is a fact-specific question. *Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). Based on the facts of this case, the Court concludes that defendant reasonably believed that his conduct did not violate plaintiff's clearly established statutory or constitutional rights. As noted above, defendant appears to have followed the applicable New York regulations quite diligently, though in a manner which ultimately deprived plaintiff of certain due process rights. While plaintiff's right to attend had been established as a constitutional right, it was not clear at the time of the hearing in March, 1987 that an inmate has a due process right to have his version of the facts considered in the event he is lawfully excluded. *See Anderson, supra,* 107 S.Ct. at 3039 (the "contours of the right" must be "sufficiently clear that a reasonable official would understand that what he is doing violates the right"). For

**13.** The uncertainty surrounding the refusal of Malik to accept the assistant's help does not create an issue of disputed fact; there is no dispute, only an absence of fact. As this Court frames the due process requirement, the defendant would have the burden of proving as part of its defense that a reasonable effort was made to provide the inmate with adequate representation. *See Pino, supra,* 605 F.Supp. at 1317 (the inadequate nature of the employee assistant's representation amounted to constitutional error).

these reasons, the Court finds that defendant, in his personal capacity, should be granted summary judgment for reasons of qualified immunity.

### Cruel and Unusual Punishment

Magistrate Buchwald concluded that although certain issues of fact were both genuine and material, defendant should be granted summary judgment on the basis of qualified immunity. The Magistrate determined that defendant acted in accordance with state policy and reasonably believed that his actions were consistent with existing law and constitutional principles. Defendant objects that the presence of a factual issue concerning the nutritional value of the restricted diet imposed on him entitles him to a jury trial. The Court disagrees.

 The Eighth Amendment prohibition against cruel and unusual punishment mandates that prisoners, even those receiving restricted diets for punitive purposes, receive nutritionally adequate food that does not present an imminent danger to the health of the inmate consuming it. *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir.1983) (citations omitted). While it is unfortunately true that the record does not establish that the diet plaintiff received was nutritionally adequate, defendant would be entitled to summary judgment even if the food were not nutritionally adequate. Nothing in the complaint or objections suggest that defendant, the hearing officer, acted unconstitutionally in *imposing* the restricted diet. *See Cunningham v. Jones*, 667 F.2d 565 (6th Cir.1982) (imposition of nutritionally adequate restrictive diet—one meal per day for fifteen days—does not violate Eighth Amendment). Plaintiff has not established or even created an inference that defendant knew plaintiff would receive a nutritionally inadequate diet. As the Magistrate concludes, defendant is entitled to qualified immunity under these circumstances since it was objectively reasonable to believe that impos-

ing the restricted diet would not violate the Constitution. Accordingly, summary judgment in favor of defendant is granted.

### Food Contamination

Plaintiff has repeatedly written to this Court claiming that certain prison officials, who are subordinates of defendant, have contaminated his food in part as retaliation for bringing this action. Plaintiff has even sent a sample of his food to the Court, a sample which was unrecognizable by the time it arrived. The Magistrate recommended that plaintiff's request for injunctive relief to enjoin the alleged food contamination be denied since none of the alleged perpetrators are named as defendant and since the Magistrate recommended that the Court award summary judgment on the principal claims.[14]

 Contamination of an inmate's food states a cause of action under 42 U.S.C. § 1983. *Robles, supra,* 725 F.2d at 16. Furthermore, a claim for injunctive relief, as opposed to monetary relief, may be made on a theory of *respondeat superior* in a § 1983 action. *Ganguly v. New York State Dept. of Mental Hygiene,* 511 F.Supp. 420, 424 (S.D.N.Y.1981).

Plaintiff's application for injunctive relief suffers from a few fatal problems, however. It is unclear whether defendant or the persons named have been properly served with the notice of motion. The only notice of motion that has been docketed was filed on August 24, 1987. In her first Report and Recommendation, the Magistrate noted that the papers had not been served. She sent the papers to defendant, but recommended that the motion be dismissed prior to the date defendant's response was due. This Court dismissed that motion as moot, and defendant has not responded to the allegations. *See* Memorandum Opinion and Order dated February 25, 1988. When plaintiff returned to Green Haven, the Court asked the Magistrate to reconsider the motion, which she now recommends be dismissed. In the meantime,

---

**14.** Plaintiff also requested an injunction to enjoin defendant from engaging in psychological intimidation and verbal harassment. These allegations, as the Magistrate points out, do not state a claim under § 1983.

defendant has sent this Court other purported motions seeking injunctive relief against a host of correction officers at Green Haven. These motions do not appear to have been served on defendant or the named officers. Additionally, it is not clear whether the named officers are subordinates of defendant such that he would be a properly named defendant in this action.[15] Plaintiff's papers state that an action is presently pending before another judge of this Court against at least one of the officers named in his motions for injunctive relief; it would be more appropriate to seek injunctive relief against that officer in the context of that action.[16] For these reasons, the Court dismisses plaintiff's application for injunctive relief.

## CONCLUSION

For the reasons stated above, the Court decides that defendant did not violate state law in the manner in which he held the hearing, but did violate due process. Nonetheless, the Court grants defendant's motion for summary judgment on the basis of the Eleventh Amendment—to the extent the action was against him in his official capacity, and the qualified immunity doctrine—to the extent the action was against him in his personal capacity. The Court similarly concludes that defendant was not liable for any Eighth Amendment violations. Plaintiff's application for temporary injunctive relief is denied.

SO ORDERED.

---

**15.** In the first notice of motion, plaintiff characterizes the alleged perpetrators as "conspirators" of defendant, and clearly notes that only Captain Tanner is the defendant. A later submission characterized the "conspiring" persons as "employee subordinates".

**16.** The Court has just received notice that plaintiff has been transferred to the Auburn Correctional Facility, thus mooting his application for temporary injunctive relief against the Green Haven correction officers.