**Milton PAYNE, Plaintiff,**

v.

**D. AXELROD, Com. NYS Dept. of Health, et al., Defendants.**

No. 90–CV–938.

United States District Court, N.D. New York.

Jan. 4, 1995.

1552

Milton Payne, pro se.

Darren O'Connor, Asst. Atty. Gen., G. Oliver Koppell, Atty. Gen. of the State of N.Y., for defendants except Smith.

### OPINION

KAPLAN, District Judge.[1]

Plaintiff, a prisoner at the Great Meadow Correctional Facility ("GMCF") operated by the New York State Department of Correctional Services ("DOCS") at the time of the events relevant here, brings this action pursuant to 42 U.S.C. § 1983. Plaintiff seeks damages for the alleged filing of false weapon possession charges against him and for alleged procedural deficiencies in the hearing on those charges. Plaintiff claims these violations led to his confinement in a Special Housing Unit ("SHU"). Furthermore, plaintiff seeks damages for the alleged unsanitary conditions in SHU and the allegedly inadequate medical care he received while there.

This action was commenced in October 1990 against then Commissioner of Health David Axelrod, then DOCS Commissioner Thomas Coughlin, Great Meadow Superintendent Leonardo, Hearing Officer ("HO") Patterson, Sergeant Smith, Correction Officer ("CO") White and CO Young. By judgment dated October 30, 1991, the action was dismissed against defendant Axelrod. Sergeant Smith has not been served and has not appeared.

Defendants now move for summary judgment dismissing the complaint. Plaintiff cross moves for partial summary judgment "as to issue of Prison Disciplinary Disposition."

### Facts

#### The September 21, 1989 Fire

On September 21, 1989 a small fire broke out in cell number B8–14. The cell was not plaintiff's. (Cpt ¶ 14; Stinson Aff. ¶ 11) Plaintiff claims, however, that he witnessed the incident, that the fire was set by CO Telesky, and that plaintiff reported the incident to prison authorities.[2] (Cpt ¶¶ 14–15) Defendants, he contends, have retaliated against him in consequence. (*Id.* ¶ 14)

#### The November 9, 1989 Cell Search

On November 9, 1989, two officers, CO White and Sgt. Smith, searched plaintiff's cell. (Cpt ¶¶ 16–18 Stinson Aff. 12) There is a dispute as to what then occurred.

According to plaintiff, Sgt. Smith dragged a bag from storage to plaintiff's cell. CO White then claimed to have found a razor blade in the bag. Plaintiff maintains that this bag did not belong to him and, in any event, that the razor was of a sort routinely issued to Great Meadow inmates by prison authorities. (Cpt ¶¶ 18–19; *See* Opp. to Def. Summary Judgment [docket item 44] ¶¶ 13–15) Plaintiff claims that this permissible item was used as a pretext for trumped up disciplinary charges.

According to defendants, Officer White found a single edge razor blade concealed in an envelope in a box of envelopes contained in a draft bag in plaintiff's cell. (Stinson Aff. ¶ 12 & Ex. 12) Great Meadow rules provide that inmates are permitted to possess only disposable razors. (Stinson Aff. Ex. 13) The implication is that the razor blade was contraband.

---

**1.** Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

**2.** Defendants contend that the complaint was investigated and that it was concluded that CO Telesky did not start the fire. (Stinson Aff. ¶ 11)

*The Disciplinary Hearing*

Officer White filed a misbehavior report against plaintiff on November 9, 1989, charging him with possessing a weapon. (*Id.* Ex. 13; (misbehavior report)) Defendants claim, and plaintiff denies, that on November 10, 1989 at 7:54 p.m., Officer Young attempted to serve plaintiff with the misbehavior report and ascertain whether plaintiff wanted assistance in preparing a defense to the charges. (Def. Mem. 7)

The hearing began on November 14, 1989 before John Patterson, an attorney hearing officer employed out of the DOCS central office. Patterson read the misbehavior report to plaintiff and showed him a picture of the razor blade. (Stinson Aff. Ex. 14 at 1) In response to Patterson's questioning, plaintiff said that he never had been served with the misbehavior report or offered an assistant, although he had received an evidence tag stating that a razor blade had been taken from plaintiff's cell on November 9, 1989 at 7:45 a.m. (*Id.* at 1–3) Plaintiff said the tag was signed by Officer "Whik" and that he wanted this officer as a witness. (O'Connor Aff. ¶ 2) Patterson informed plaintiff that the officer's name was "White" and that Officer White could be brought to the hearing to determine if he was the officer involved. (Stinson Aff. Ex. 14 at 2–3) [3] Following plaintiff's claim that he was not served with the report or offered assistance, Patterson adjourned the hearing at 2:51 p.m. to arrange for the testimony of Officer Young.

The hearing was reconvened on November 21, 1989. (*Id.* at 3–4) Patterson asked Young if he had attempted to serve plaintiff with

notice before the original hearing on November 14. Young stated that, on November 9 or 10, 1989, he had offered plaintiff the opportunity to take a copy of the report and have an assistant assigned. According to Young, plaintiff refused to get off his bed, stated that he did not want anything to do with the report and that he did not need assistance, and told Young to get away from the cell. (*Id.* at 4) Patterson then allowed plaintiff to question Officer Young. (*Id.* at 4–5) After briefly questioning Young, plaintiff allegedly became abusive, calling Young a homosexual and making threatening gestures toward the witness. (O'Connor Aff. ¶ 2) Patterson, defendants say, warned plaintiff to stop, but plaintiff persisted. Patterson then excluded plaintiff from the room because he felt the prisoner's behavior threatened the plaintiff's safety and the integrity of the facility. Patterson conducted the remainder of the hearing in plaintiff's absence.[4] (Stinson Aff. Ex. 14 at 5–6)

Notwithstanding plaintiff's absence, Patterson called Officer White because he was "the one witness that Mr. Payne appeared to want." White said that he was the officer listed in the misbehavior report and that the report was true and accurate. (*Id.* at 6) Patterson found plaintiff guilty of the charge and imposed a penalty of 90 days' cell confinement and loss of privileges. (*Id.* at 6–7) On November 21, 1989, Officer Rodriguez informed plaintiff of the right to appeal and delivered to plaintiff the hearing disposition rendered forms and appellate papers. (*Id.* Ex. 12 (memorandum from Rodriguez to hearing officer)) Plaintiff claims in his com-

---

**3.** The evidence tag lists CO B. White as the officer involved. However, the name is handwritten, and plaintiff insisted that the name was "Whik." (*See* Stinson Aff. Ex. 12 (copy of evidence tag))

**4.** The record as to exactly what transpired consists of less a than perfect transcription of a tape of the hearing (Stinson Aff. Ex. 14), an account by defendants' counsel of certain remarks allegedly on the tape but not in the transcript (O'Connor Aff. ¶ 2), and certain admissions by plaintiff. Plaintiff unquestionably called CO Young a homosexual. (Payne Aff. [docket item 43] ¶¶ 16–17, Opp to Def. Summ. Judgment [docket item 44] ¶ 15) Defendants maintain that there was more to plaintiff's alleged "foul-mouthed tirade." The

only evidence of this, however, is in an affirmation by defendants' attorney, Mr. O'Connor. As there is no indication that Mr. O'Connor's affidavit is based on personal knowledge, as is required by Fed.R.Civ.P. 56(e), this evidence is insufficient to establish this contention. The transcript of the hearing, however, supports defendants' claim that plaintiff made threatening gestures and that Patterson ejected plaintiff because he felt that security was threatened. (Stinson Aff. Ex. 14 at 5). Plaintiff neither objects to the admissibility of the transcript nor denies that he was threatening at the hearing. Therefore the truth of his threatening demeanor, and Patterson's reaction to it, are established for purposes of this motion.

plaint, and defendants do not deny, that plaintiff appealed to defendants Leonardo and Coughlin.

Plaintiff alleges that defendants deprived him of his rights to notice of the alleged violation, to have assistance, to present witnesses, to be present at the hearing, to a fair hearing officer, and to a determination based on substantial evidence. (Cpt ¶ 22)

*Plaintiff's Special Housing Unit Confinement*

Plaintiff alleges that he was subjected to cruel and unusual punishment while he was in SHU by virtue of the allegedly unsanitary conditions of his cell and the allegedly inadequate medical care he received for a case of pneumonia. Plaintiff seeks to hold Superintendent Leonardo and former Commissioner Coughlin liable for these alleged deficiencies. Extended discussion of these allegations is not warranted because plaintiff does not allege that either defendant was personally involved in these alleged deprivations. These claims against these defendants therefore are dismissed from the case. *Monell v. Department of Social Services,* 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–2038, 56 L.Ed.2d 611 (1978); *Al–Jundi v. Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989).

### Discussion

Plaintiff claims that Officer White, Officer Young and Hearing Officer Patterson violated the Fourteenth Amendment in three instances: when plaintiff's cell was entered and allegedly false charges of weapon possession were brought against him, when defendants allegedly failed to give him adequate notice of these charges, and when defendants conducted a hearing on these charges allegedly suffused with procedural errors. Plaintiff further maintains that defendants Superintendent Leonardo and former Commissioner Coughlin, by virtue of their review of the hearing on appeal, are implicated in the alleged procedural deficiencies of the hearing. Defendants deny all of these allegations and further contend that Patterson is absolutely immune from suit by virtue of his status as a quasi-judicial officer. They contend also that all of the defendants are protected from liability by the doctrine of qualified immunity.

*Absolute Immunity*

■ Defendants maintain that Patterson is absolutely immune from plaintiff's suit under *Butz v. Economou,* 438 U.S. 478, 509, 98 S.Ct. 2894, 2912, 57 L.Ed.2d 895 (1979), and *Shelly v. Johnson,* 849 F.2d 228, 230 (6th Cir.1988). Under *Butz,* an officer performing judicial or quasi-judicial functions is immune from suit under Section 1983 if such immunity would facilitate the performance of the officer's function and if the accuracy and independence of the officer's judgments are assured by the rules and regulations under which the officer operates. *Butz,* 438 U.S. at 509–511, 98 S.Ct. at 2912–13 (describing six factors to be examined in evaluating accuracy and independence) Patterson is an attorney hired by DOCS to conduct disciplinary hearings at GMCF. Normally prison officials serving as hearing officers are not absolutely immune but are protected by qualified immunity only. *Cleavinger v. Saxner,* 474 U.S. 193, 203–04, 106 S.Ct. 496, 501–03, 88 L.Ed.2d 507 (1985). Defendants argue, however, that because Patterson is not an employee of GMCF, but rather is employed by the DOCS central office, he is sufficiently independent of the prison authorities to merit absolute immunity.

*Young v. Selsky,* 41 F.3d 47 (2d Cir.1994), defeats that argument. There, the officer in question was an official employed by DOCS to review hearing dispositions on appeal. The Court of Appeals denied absolute immunity to him because the accuracy and independence of the officer's judgment were undermined by two features of his situation: the fact that his judgments were based on records developed in forums that themselves had unreliable procedures, and the fact that he was paid and served at the pleasure of DOCS, an arrangement that threatened his independence. *Id.* at 53–54.

Here, Patterson conducts disciplinary hearings of the sort that the officer in *Selsky* reviewed on appeal. He too is paid by and serves at the pleasure of DOCS. His absolute immunity argument therefore must be rejected.

*The Search of Plaintiff's Cell and the Alleged False Charges*

■ Plaintiff alleges that Officer White's search of his cell on November 9 violated Section 1983 because (1) White allegedly should not have entered the cell without cause and (2) White allegedly planted a razor in plaintiff's cell to frame him for reporting on Officer Telesky, the officer whom plaintiff had accused of setting a fire in a cell in September, 1989.

*Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) permits even arbitrary cell searches in prison. Therefore plaintiff cannot complain of the search itself.

■ Plaintiff's claim that Officer White framed him in retaliation for reporting Officer Telesky must survive. Under *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986), the filing of false charges is normally not actionable under Section 1983. *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir.1988), however, held that a prisoner stated a valid claim against prison guards by alleging that the guards falsely accused the prisoner of insubordination in retaliation for the prisoner's cooperation with authorities investigating abuse of inmates. Plaintiff here similarly asserts interference with his right to petition for redress of grievances, and thus states a claim. Furthermore, there is a genuine issue of material fact as to whether CO White did retaliate against plaintiff.

■ Nor is CO White entitled to dismissal of this claim on the basis of qualified immunity. Under *Harlow v. Fitzgerald*, 457 U.S.

800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Defendants offer no reason why a reasonable person would not have known of the principle articulated in *Franco* at the time of the events in question, which occurred one year after *Franco* was decided.[5]

■ The claim based on the cell search and the alleged frame-up is asserted also against CO Young and Patterson on the theory that they conspired with CO White[6] and against Patterson on the additional theory of supervisory liability. The claim against these defendants, however, must be dismissed.

Plaintiff does not support his allegation of a conspiracy with any specific facts. *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir.1981), requires that an allegation of a conspiracy to violate a person's civil rights be pleaded with specificity.[7] Even construing plaintiff's allegations liberally, he fails to meet this burden as neither his affidavit nor his complaint contains anything supporting the allegation of conspiracy. This aspect of plaintiff's case is therefore dismissed.

■ Plaintiff's claim that Patterson, as a supervisory official, is responsible for White's alleged wrongdoing also must be rejected. Supervisory officials are responsible for the

---

**5.** Recent Second Circuit cases suggest that the intentional filing of false charges, by itself and not necessarily in retaliation for the exercise of constitutional rights, also may violate a prisoner's substantive due process rights. *Grillo v. Coughlin*, 31 F.3d 53, 57 (2d Cir.1994); *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir.1994). Defendant White, however, would probably be immune from a claim based solely on the intentional filing of false charges because this line of cases was not clearly established in 1989, as *Lowrance* and *Grillo* were not decided until 1994. The Court need not address this issue, however, because plaintiff's cause of action is based on retaliation.

**6.** Plaintiff's affidavit might be construed to allege also that defendants Leonardo and Patterson were involved in the conspiracy. Although this

point is unclear, it is also irrelevant, as such a claim against these defendants must be rejected for the same reasons as the conspiracy claim against Patterson and Young.

**7.** The Court notes that *Angola* arguably is somewhat at odds with *Leatherman v. Tarrant County Narcotics Unit*, —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), which held that the Fifth Circuit's heightened pleading standard for civil rights complaints against municipalities was inconsistent with Fed.R.Civ.P. 8. *Leatherman*, however, does not apply here because it explicitly avoids deciding whether heightened pleading standards might be appropriate in suits against individual officers. *Leatherman*, —— U.S. at ——, 113 S.Ct. at 1162. In consequence, we remain bound by this Circuit's precedent in *Angola*.

wrongs of their subordinates if they have "actual or constructive notice of unconstitutional practices and demonstrate 'gross negligence' or 'deliberate indifference' by failing to act." *Al-Jundi*, 885 F.2d at 1066 *citing Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir.1989). Patterson, however, did not supervise White in the quotidian performance of his duties. Nor does plaintiff allege, beyond his conclusory allegation of conspiracy, that Patterson knew of the deprivation and failed to remedy it. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994). Plaintiff's claim based on the false filing of a misbehavior report in retaliation for plaintiffs informing on CO Telesky therefore survives only against CO White.

### The Allegedly Inadequate Notice

■ Plaintiff complains that Officer Young did not deliver notice of the misbehavior report. Officer Young contends that he did. Whether he did or did not is immaterial, however, because plaintiff received notice at the initial hearing on this matter on November 14, 1989, after which it was adjourned for one week, giving plaintiff plenty of time to prepare his defense. Thus, any procedural defect in notice by Young subsequently was cured by Patterson. Defendants' motion on this point therefore is granted. *Grillo*, 31 F.3d 53 at 57 (subsequent procedure can cure earlier procedural defect).

### The Alleged Due Process Violations at the Hearing

Plaintiff alleges several violations of due process at the November 14th and 21st hearings.

■ First, plaintiff maintains that he was not given adequate assistance at the hearing. *Eng v. Coughlin*, 858 F.2d 889, 897–98 (2d Cir.1988) and *Wolff v. McDonnell*, 418 U.S. 539, 570–71, 94 S.Ct. 2963, 2981–82, 41 L.Ed.2d 935 (1974), require an inmate to be given assistance at a disciplinary hearing only if the issues are unduly complex, the inmate is illiterate, or the inmate is confined in SHU or otherwise is incapable of preparing for or. participating in the hearing. There is no indication that any of these circumstances was present in plaintiff's case.

Therefore defendants' motion on this point must be granted.

■ Next, plaintiff says the disciplinary ruling was not supported by sufficient evidence. *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985) and *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir.1992), require a disciplinary hearing disposition to be supported by "some evidence." The eyewitness testimony of one officer is sufficient if the officer testifies to the particular prisoner's acts. *See Hill*, 472 U.S. at 457, 105 S.Ct. at 2775; *Griffin v. Spratt*, 969 F.2d 16, 22 (2d Cir. 1992). Patterson heard CO White's eyewitness testimony that he found an illegal razor in plaintiff's· cell, which is sufficient under *Hill*. This aspect of defendants' motion therefore is granted.

■ Further, plaintiff contends that Patterson was not impartial at the hearing. Prisoners are guaranteed impartial hearing officers in disciplinary hearings. *Wolff v. McDonnell*, 418 U.S. at 570–71, 94 S.Ct. at 2981–82; *Patterson v. Coughlin*, 905 F.2d 564, 569 (2d Cir.1990); 7 N.Y.C.R.R. 254.1 (1992). Plaintiff, however, does not allege how Patterson was impartial, other than through plaintiff's insufficient allegations of Patterson's participation in a conspiracy to deny plaintiff his rights. To state a claim on this basis, a plaintiff must allege that the hearing officer was biased or prejudged the facts. *Id.* As plaintiff fails to do this, defendants' motion is granted on this point.

■ Finally, plaintiff argues that he was improperly excluded from the hearing and thereby prevented from calling his witnesses. A hearing officer is permitted to limit a prisoner's procedural rights at a disciplinary hearing, including the right to attend the hearing and call witnesses, if such limitation is necessary to serve some penological purpose. *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979; *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir.1991); *Malik v. Tanner*, 697 F.Supp. 1294, 1302 (S.D.N.Y.1988). The official has the burden of justifying such an exclusion by showing it was rational. *Kingsley*, 937 F.2d at 30–31. As noted in *Malik*, the threat of violence justifies excluding a

prisoner from his hearing. *Malik*, 697 F.Supp. at 1302. The transcript of the hearing, particularly Patterson's uncontroverted description of plaintiff's threatening motions, supports the contention that plaintiff threatened violence and justifies Patterson's exclusion of plaintiff from the hearing.

### Conclusion

Defendants' motion for summary judgment is denied with respect to plaintiff's claim against Officer White for the alleged retaliatory filing of an allegedly false misbehavior report, and is granted in all other respects. Plaintiff's cross motion for summary judgment with respect to the alleged due process deficiencies prior to and at his hearing is denied.

SO ORDERED.