John S. GRILLO, Plaintiff–Appellant,

v.

Thomas A. COUGHLIN, Donald Selsky, Daniel Senkowski, Sam Gordon, C. Treggett, P. Perry, L. Brousseau, Terry F. Aubin, L. DeLong and C. McDowell, jointly, severally and individually, Defendants–Appellees.

No. 1436, Docket 93–2370.

United States Court of Appeals, Second Circuit.

Argued April 7, 1994.

Decided July 22, 1994.

Luigi Sensi, New York City (Douglas F. Broder, Coudert Brothers, New York City, on the brief), for plaintiff-appellant.

Troy J. Oechsner, Asst. Atty. Gen. of the State of N.Y. (G. Oliver Koppell, Atty. Gen. of the State of N.Y., Peter H. Schiff, Deputy Sol. Gen. and Nancy A. Spiegel, Asst. Atty. Gen., on the brief), for defendants-appellees.

Before NEWMAN, Chief Judge, WALKER, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

Plaintiff-Appellant John Grillo brought this action under 42 U.S.C. § 1983, alleging that his due process rights were violated in the course of a prison disciplinary hearing. Grillo's principal claim is that the urinalysis forms offered against him at his hearing to document his positive urine test for opiates were altered and falsified. He relies primarily on the fact that the forms used in evidence against him at the hearing differed from the duplicates furnished to him. An omission and an apparent inconsistency that appeared on Grillo's copies of two forms had been filled in and corrected on the versions submitted to the hearing officer; Grillo contends that this evidence was deliberately falsified to strengthen the case against him.

Although Grillo discovered and pointed out these discrepancies at the hearing, he was adjudicated guilty and sentenced to 360 days in keeplock and a loss of privileges. He appealed to the defendant Donald Selsky, Director of Inmate Discipline, under N.Y. Comp.Codes R. & Regs. tit. 7, § 253.8 (1989). Selsky reviewed the disposition and affirmed it.

In March 1989, Grillo petitioned the Supreme Court of New York for Clinton County for relief under Article 78 of the New York C.P.L.R. After 235 days of Grillo's sentence had been served, the Supreme Court ordered Grillo released and his record expunged.[1] Grillo then filed this § 1983 action in federal court against numerous employees and officials of the State Department of Corrections. Judge Frederick Scullin of the District Court for the Northern District of New York granted summary judgment for the defendants. Plaintiff appealed. For the reasons stated below, we believe that while summary judgment was appropriate as to some of Grillo's claims, as to his claims relating to the alteration of the evidence it was not. We therefore affirm in part and reverse in part, remanding for further proceedings on that issue.

## Background

On December 9, 1988, Grillo was an inmate at New York State's Clinton Correctional Facility. Because he was observed by a prison official to be "acting funny" after a trailer visit, he was ordered to take a urine drug test. Grillo was then served on December 15 with a misbehavior report charging him with violating N.Y. Comp.Codes R. & Regs. tit. 7, § 113.12 (1989), which bars the use of controlled substances in prison. As required under New York law, the report was accompanied by the "Request for Urinalysis Test Form" (RUT), the document that follows the urine sample throughout its testing. The report was also accompanied by two "Urinalysis Procedure Forms" (UPs), which are filled out by the individual officers who test an inmate's urine for drugs. The UPs were filled out by defendants Brousseau and Aubin, the two officers who tested Grillo's urine for opiates.

Because no superintendent, deputy superintendent, or captain was available, defendant Sam Gordon, a Vocational Supervisor, was assigned to conduct the Superintendent's hearing.[2] The hearing commenced on December 22, 1988, but was adjourned for one day so that Grillo could be provided with the New York regulations that govern urinalysis. The hearing was subsequently held over several sessions.

During the hearing, it emerged that the copies of two documents served on Grillo differed from the copies submitted to the hearing officer as evidence against him. The

---

1. The New York court held that

   There is no excuse, however, for the subsequent falsification of a necessary form by filling in, after the fact, a box which was not properly completed in the first instance. It appears to the Court that such after-the-fact completion of the forms in question occurred in this case. ... Such a procedure is simply intolerable. Furthermore, the attempt to blame the omission on the petitioning inmate also goes beyond fair play and due process.

   *Grillo v. Senkowski*, PW–358, slip op. at 3 (N.Y.Sup.Ct. July 14, 1989).

2. "In the New York Prison system, Tier III disciplinary hearings, also known as Superintendent's hearings, are used for the review of the most serious violations of institutional rules. *See* N.Y.Comp.Codes R. & Regs. tit. 7, § 270.3 (1989)." *Walker v. Bates*, 23 F.3d 652, 654 (2d Cir.1994).

copy of the RUT form served on Grillo had been filled in as follows:

**Specimen tested by (1st test)** L. Brousseau **Date** 12/14/88 **Time** 9:15 **Results** positive for opiates.

The form submitted to the hearing officer was identical except that after the entry "positive for opiates," appeared the notation "10:10 am."

Grillo, initially relying on the information that appeared on *his* copy and unaware of the added entry on the hearing officer's copy, had argued at his hearing that there was an inconsistency in the proofs against him, as the RUT shows 9:15 as the "Time of Test," whereas Brousseau's UP form lists 10:10 AM as his "Time of Test." Understandably, Grillo was having great difficulty explaining his contention about the inconsistent times, because the UP and RUT form before the hearing officer both showed 10:10 as the relevant time.

Brousseau testified that 9:15 identified the time he began his testing, while 10:10 was the time he made his finding of the presence of opiates. The hearing officer never asked him to explain how the form submitted to the hearing officer came to be altered after separation from Grillo's copy.

The second alleged tampering concerns Officer Aubin's UP form. The UP form records the steps taken in the urinalysis procedure. The form includes a line that asks "Were reagents discolored? Yes ___ No ___." If the reagent is discolored, it is considered unreliable and should be discarded. On Grillo's copy of Auburn's UP form, this question was left blank. Grillo sought to argue on this basis that the test was unreliable as there was no showing that the reagent had been checked for discoloration. However, unbeknownst to Grillo, the copy provided to the hearing officer showed a check in the "No" box.

When the discrepancy was revealed, the hearing officer reached out with his pen to place a corresponding check on Grillo's copy. Grillo stopped him. Because the hearing officer's pen touched the paper, there remains a dot on Grillo's copy on the "NO" line where the check mark appears on the official copy. Aubin was then questioned by the hearing officer by telephone. He testified that it was his practice not to use discolored reagents.

From our review of the record, it appears that Hearing Officer Gordon made no attempt to explore how, when, and why the official forms were altered. Neither Brousseau nor Aubin were asked if they knew why Grillo's copies of the RUT and of Aubin's UP differed from those submitted in evidence. Gordon also never asked Aubin if he had checked the reagents for discoloration, if he added the check mark later, or if he knew why Grillo's form did not have a check mark while Gordon's did. Additionally, the variance between the two copies of the RUT form did not emerge until the last day of the hearing. The hearing officer admitted he could not explain the variance, yet he adjourned the proceedings without inquiring into the issue, and read his results into the record one hour later, finding Grillo in violation; his written opinion makes no mention of the inconsistencies.

### Proceedings Below

After Grillo's § 1983 action had been lodged in the district court, both sides moved for summary judgment. Judge Scullin then assigned the matter to Magistrate Judge Ralph Smith, who recommended that the defendants' motion for summary judgment be granted. In his view, under our decision in *Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988); *see also* dissents from denial of rehearing in banc, 826 F.2d 194 (2d Cir.1987), the filing of allegedly unfounded charges, or the submission of spurious evidence, by state officers would not violate Grillo's due process rights as long as he was afforded a hearing that conformed to the requirements of due process, as specified in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Therefore, Magistrate Judge Smith concluded that, even if the evidence had been tampered with to bolster the charges against Grillo, a § 1983 action could not be maintained because Grillo had a hearing at which his *Wolff* rights were afforded.

Grillo lodged objections in the district court to the magistrate judge's Report and Recommendation. Judge Scullin likewise ruled that, because Grillo received a hearing that complied with the requirements of due process, his objection to the use of altered or forged evidence did not state a violation of a constitutional right. The district judge also ruled that Grillo "ha[d] not proffered any evidence which supports his contention that any of the documents which resulted in the disciplinary measures taken against him were forged or otherwise altered by the defendants herein." Accordingly, Judge Scullin denied Grillo's motion for summary judgment and granted summary judgment in favor of the defendants.

## Discussion

*I. Evidence tampering.* For the reasons given below, we do not agree with the district court that summary judgment was warranted as to Grillo's claims of evidence tampering.

■ First, we cannot accept the district court's conclusion that Grillo presented no evidence of the forgery or wrongful alteration of the evidence used against him. It was clear beyond dispute that the RUT and UP forms had noncontemporaneous entries added to them after Grillo's copies had been delivered to him. Although it may be that the alteration of the forms was done without nefarious purpose or intent to deceive, it is also possible that the alterations were done to conceal deficiencies in the evidence against Grillo. It was not appropriate to prejudge this issue on a motion for summary judgment.

■ Nor do we agree with the court below that our holding in *Freeman v. Rideout, supra,* 808 F.2d 949, called for grant of summary judgment in favor of the defendants. It is true that we held in *Freeman* that a fair hearing, conforming to the due process standards of *Wolff,* would "cure" a constitutional violation otherwise resulting from a false accusation. *Id.* at 954. Because Grillo has proffered evidence that he was not afforded a proper *Wolff* hearing, his claims were not properly disposed of on summary judgment.

A hearing in which the false accusation or evidence is shown to the factfinder but concealed from the accused would not comport with the due process standards of *Wolff v. McDonnell.* It is but a slight turn on Kafka for the accused to be required to mount his defense referring to prison documents that, unbeknownst to him, differ from those before the hearing officer. Unquestionably, the right of an accused to know the evidence against him and to marshal a defense is compromised when the evidence he is shown differs from the evidence shown to the factfinder. *See Patterson v. Coughlin,* 761 F.2d 886 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986). Therefore, the proposition of *Freeman*—that any unconstitutionality inhering in a false accusation is vitiated when it is tested in a fair hearing—cannot support summary judgment where there is evidence that the accused was not shown the allegedly spurious evidence used against him, and therefore, arguably, did not receive a fair hearing.

Indeed, while it is one aspect of Grillo's claim that his *substantive* due process rights were violated by falsification of evidence, it is a second aspect of his claim that his *procedural* due process rights were violated by furnishing him with one version of the evidence while a significantly different version was presented to the factfinder.

■ We recognize that Grillo did eventually see the forms being used as evidence against him. However, he should have the opportunity to prove in the district court that by the time he saw them it was too late to recoup; he had already suffered from an ineffectual defense resulting in part from his ignorance of the content of the documents used as evidence against him. We have no doubt furthermore that, had he requested to see the hearing officer's documents, they would have been shown to him. This does not dispel the procedural unfairness; Grillo did not ask to see the documents, because, through no fault of his own, he was unaware that they differed from the copies furnished to him. We conclude it was not properly determined on summary judgment that Grillo's procedural due process rights were guar-

anteed by a fair hearing conforming to the requirements of *Wolff v. McDonnell.*

There is a further reason why *Freeman* does not require dismissal of Grillo's action. Subsequent decisions of this court have indicated that the restrictive rule of *Freeman* is to be read more narrowly than the interpretation given by the court below. In *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988), we ruled that *Freeman* applies only in the case of a complaint that alleges solely procedural, as opposed to substantive, due process violations. In *Franco,* a § 1983 action predicated on a falsified charge made by a prison official was permitted to go forward because the court found that "[u]nlike *Freeman,* the complaint in the instant case is not one that relies solely on the procedural dictates of the Due Process Clause." *Id.* at 589. Additionally, in *Lowrance v. Achtyl,* 20 F.3d 529 (2d Cir.1994), we held that an arbitrarily imposed confinement can constitute a *substantive* due process violation. We noted there:

> Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.' Moreover government action might be so arbitrary that it violates substantive due process 'regardless of the fairness of the procedures used.'

*Id.* at 537 (citations omitted).

We conclude that it was error for the district court, in reliance on the reasons it gave, to grant the defendants' motion for summary judgment against Grillo's claim that his due process rights were violated by the use of altered documents as evidence against him in a prison disciplinary proceeding that caused his confinement for 235 days.[3]

We recognize, however, that summary judgment may properly be granted on this claim as to some of the defendants, either because Grillo can show no involvement on their part in arguably unconstitutional action or because of qualified immunity. *See Cleavinger v. Saxner,* 474 U.S. 193, 206, 106 S.Ct. 496, 503, 88 L.Ed.2d 507 (1985) (hearing officers entitled to qualified immunity); *Walker v. Bates,* 23 F.3d 652, 656 (2d Cir.1994) (same); *Gittens v. LeFevre,* 891 F.2d 38, 42 (2d Cir.1989) (circumstances justifying qualified immunity). We also recognize that upon full consideration at trial, it may be determined that Grillo suffered no violation of his rights. Furthermore, we express no views as to what damages, if any, may be recoverable if Grillo establishes that his constitutional rights were violated.

*II. Other Claims.* We affirm the granting of summary judgment on Grillo's remaining claims, which we find to be without merit.

■ Grillo asserts that his due process rights were violated by Officer Aubin's signing of Officer Brousseau's name in the chain of custody portion of the RUT form. There is no merit to this contention; the trial judge correctly granted summary judgment on it.

We also agree with the trial court's decision to grant summary judgment on the claim that Officer Perry, who was assigned to assist Grillo, provided constitutionally inadequate assistance. Grillo did not substantiate this claim by any showing of constitutional inadequacy on Perry's part.[4]

---

3. Under our precedents, a § 1983 action will lie even if on administrative appeal, a prisoner is released from the preventive detention imposed by a prison adjudication. We held in *Walker v. Bates,* 23 F.3d 652, 658–59 (2d Cir.1994) that "The rule is that once prison officials deprive an inmate of his constitutional procedural rights at a disciplinary hearing and the prisoner commences to serve a punitive sentence imposed at the conclusion of the hearing, the prison official responsible for the due process deprivation must respond in damages, absent the successful interposition of a qualified immunity defense." *See also Mays v. Mahoney,* 23 F.3d 660 (2d Cir.1994) (reversal on administrative appeal does not preclude § 1983 action once prisoner has served

portion of punitive restrictive confinement). It has long been the rule in this circuit that a § 1983 action will lie even if the prisoner is released from restrictive confinement pursuant to an Article 78 proceeding. *See, e.g., Patterson v. Coughlin, supra,* 761 F.2d at 893.

4. Our affirmance of the grant of summary judgment on the claim of Perry's inadequate assistance has no bearing on any claim Grillo may be making that Perry was an accomplice in the alteration of the documents. Grillo argues in his reply brief that "at their only pre-hearing meeting, Mr. Grillo told Officer Perry of the irregularities in the forms. The after-the-fact 'corrections' of the drug test forms raise the suspicion that

58

Grillo's claim that Hearing Officer Gordon improperly sought the advice of another hearing officer also fails to state a cause of action and was properly dismissed. Officer Gordon stated that because of his lack of familiarity with urinalysis procedures, he was unsure whether one needed to request that specific drugs be tested for on the RUT. He therefore consulted with a more experienced hearing officer on this issue. Such a consultation did no injury to Grillo's due process rights. It is readily distinguishable from *Giano v. Sullivan,* 709 F.Supp. 1209 (S.D.N.Y.1989), in which the two officers who authored the misbehavior report sat in on the hearing, asked questions of the witnesses, and stayed with the hearing officer while the decision was written.

Finally we uphold the granting of summary judgment on Grillo's claim that his rights were violated by the fact that it took two weeks for Gordon to contact Officer Brousseau.

### Conclusion

With respect to Grillo's claim that his rights were violated by the presentation of altered evidence in his disciplinary hearing, the district court's grant of summary judgment in favor of the defendants is reversed. This claim is remanded for further proceedings, which shall include consideration of the motions of individual defendants for summary judgment on grounds other than those on which the district court initially ruled. As to all other claims, the grant of summary judgment in favor of the defendants is affirmed.

they may have been made in response to Mr. Grillo's disclosures to Officer Perry." Reply Br. at 2 (citation omitted). We express no view of the legal sufficiency of such a claim under § 1983.