**Cyrus C. McCORKLE, Plaintiff,**

v.

**Hans G. WALKER, et al., Defendants.**

No. 92–CV–799.

United States District Court,
N.D. New York.

Jan. 4, 1995.

## MEMORANDUM AND ORDER

KAPLAN, District Judge.[1]

Plaintiff, a prisoner at the Auburn Correctional Facility operated by the New York State Department of Correctional Services ("DOCS") at the time of the events relevant to this action, brings suit pursuant to 42 U.S.C. § 1983. He asserts various Fifth, Eighth and Fourteenth Amendment claims.

### The Motions

Plaintiff moved for partial summary judgment on October 22, 1993 but has submitted no affidavits or other evidentiary material in support of the motion. Defendants cross-move for partial summary judgment and submit affidavits of defendants Robert Greifinger, Christine Coyne and Raymond Lupo. Plaintiff, although warned of the need to supply evidentiary material in response to defendants' cross-motion,[2] has not done so.

### Discussion

## Eighth Amendment Claims

Plaintiff appears to assert that his Eighth Amendment rights were violated in four respects: he allegedly (1) was denied a change of underwear for fifteen days; (2) was not transferred to another correctional facility after psychiatric personnel employed by the Office of Mental Health suggested that a transfer might reduce some of plaintiff's stress; (3) was housed on an upper gallery despite a DOCS medical order to house plaintiff on a bottom tier; and (4) was exposed to tuberculosis while working in the Auburn infirmary.

In order to prevail on a motion for summary judgment, the moving party must establish that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). It is the moving party's burden to make this demonstration on the basis of affidavits "made on personal knowledge, ... set[ting] forth such facts as would be admissible in evidence, and ... show[ing] affirmatively that the affiant is competent to testify to the matters stated therein" and certain other evidentiary material. Rule 56(e).

■ The standard applicable to an Eighth Amendment deliberate indifference claim is clear. In order to recover, plaintiff must establish that the defendants were deliberately indifferent to his serious medical needs, i.e., that the defendants in fact were aware of an excessive or substantial risk to the plaintiff and nevertheless failed to take reasonable action to avert that risk. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Farmer v. Brennan*, —— U.S. ——, ———— & n. 8, 114 S.Ct. 1970, 1979–83 & n. 8, 128 L.Ed.2d 811 (1994).

■ Defendants are entitled to judgment as a matter of law on the first two bases of the Eighth Amendment claim. As there are no affidavits from either side on these issues, we accept plaintiff's allegations as true for purposes of these motions. We conclude that the lack of a change of underwear for fifteen days and the failure to transfer plaintiff in the circumstances alleged do not raise matters of constitutional dimension.

■ Defendants have demonstrated that there is no genuine issue of fact material to the fourth basis of the Eighth Amendment claim—the allegation that plaintiff was exposed to tuberculosis while working in the prison infirmary. Plaintiff claims to have been exposed to TB from inmate patient Jerry Fulmore. (Amend. Cpt ¶ 1(a)) Al-

1. Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

2. Defendants' notice of cross-motion specifically cautioned plaintiff as follows:
   "PLEASE TAKE FURTHER NOTICE, that pursuant to Rule 56(e) of the Federal Rules of Civil Procedure when a motion for summary judgment is made and properly supported, you may not simply rely upon your complaint, but you must respond, by affidavits or as otherwise provided in that rule, setting forth specific facts showing that there is a genuine issue of material fact for trial. If you do not so respond, summary judgment, if appropriate, may be entered against you. If Summary Judgment is granted against you, your case will be dismissed and there will be no trial on the claims dismissed by the Court."

though Fulmore did not suffer from TB (Coyne Aff. ¶ 6 & Ex. A), prison officials learned in the spring of 1991 that five inmates had been diagnosed as having TB. (Coyne Aff. ¶¶ 4, 9) Each inmate was transferred to an outside hospital (*id.* ¶ 4) and Auburn tested plaintiff, among other inmates, for TB in June and July 1991. (*Id.* ¶ 11; Greifinger Aff. ¶ 11) In November 1991 plaintiff was given a follow-up test whereupon he tested positive for exposure to TB but did not exhibit any symptoms. (Coyne Aff. ¶¶ 11–12; Greifinger Aff. ¶¶ 11–12) Plaintiff immediately was offered and accepted preventive treatment provided by Auburn. (Greifinger Aff. ¶ 14; Coyne Aff. ¶¶ 11, 15) He began therapy consisting of INH, a standard antibiotic used in TB treatment. (Greifinger Aff. ¶ 14) By January 1992, he was treated with various drugs recommended for multi-drug resistant TB by the Center for Disease Control. (*Id.*) Thus, defendants have demonstrated conclusively that they responded reasonably to plaintiff's exposure to TB. Moreover, it is undisputed that plaintiff has not suffered, and is unlikely ever to suffer, an active case of TB.

■ The third of plaintiff's Eighth Amendment arguments is not so easily disposed of. Plaintiff alleges that he suffered from asthma and that defendants ignored a DOCS medical order to house him on a lower tier. (Pl. 10(J) St. ¶ 6) He claims that defendants housed him on one of the upper galleries and did not move him until May 12, 1992, the day after he had an asthma attack. (*Id.* & Amend. Cpt ¶ 8(a)) Plaintiff asserts that this constituted deliberate indifference on the part of the defendants.

It is well known that climbing stairs exposes some people to serious medical risks. Defendants, however, have submitted no evidence in response to this claim beyond pointing out that plaintiff was keeplocked for 23 hours per day during the period of time in which he was housed on the upper gallery. (Def.Mem. 15) Defendants argue that plaintiff's keeplock status minimized any medical risks, thus tacitly acknowledging the possibility that climbing stairs may have created a

serious medical risk to plaintiff. Given defendants' insufficient showing, we cannot exclude the possibility that plaintiff might prove facts that would entitle him to relief on this claim. *See Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Accordingly, the Eighth Amendment claims all are dismissed except that pertaining to the alleged failure to house plaintiff on a lower tier, as to which defendants' motion is denied.

### Filing of Allegedly False Charges by Defendant Kowal

Plaintiff asserts that defendant Ann E. Kowal, a nurse in the prison infirmary, falsely accused him of attempting to extort and bribe her by offering her $1,000 to bring drugs into Auburn. Plaintiff claims that Kowal filed the false charges in retaliation for his informing defendants Coyne and Rosando that Kowal was the nurse on duty when inmate Fulmore nearly drowned in the infirmary.[3] (Pl. 10(J) St. ¶ 2)

Plaintiff was cited on institutional charges of bribery, extortion, smuggling and soliciting. A Tier III hearing began on November 8, 1991, and plaintiff was found guilty. (Pl. 10(J) St. ¶ 2) He was sentenced to one year in the Special Housing Unit ("SHU"), where he remained from November 8, 1991 until February 13, 1992. (*Id.*) Upon release from SHU, he was held in keeplock until October 12, 1992. (*Id.*)

■ Under *Freeman v. Rideout,* 808 F.2d 949, 951–53 (2d Cir.1986), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988), the filing of allegedly false disciplinary charges by state officers would not violate an inmate's due process rights as long as he was afforded a fair hearing where he had an opportunity to be heard. *Freeman,* however, does not apply to situations in which there are allegations that an inmate's substantive due process rights were violated despite the fairness of the procedures used. *Grillo v. Coughlin,* 31 F.3d 53, 56 (2d Cir. 1994); *Lowrance v. Achtyl,* 20 F.3d 529, 537

---

**3.** Plaintiff's unsworn assertion that Kowal was the nurse on duty is contradicted by the evidence

submitted by the defendants. (Siegfried Aff. ¶ 8 & Ex. C)

(2d Cir.1994); *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988).

■ Plaintiff asserts that the alleged filing of false charges violated his rights under the Fourteenth Amendment. As defendants have submitted no affidavits on this aspect of the case, plaintiff's allegations must be accepted as true. We are required, moreover, to read this *pro se* complaint generously in plaintiff's favor.[4] Since the complaint is sufficiently general to embrace a claim that plaintiff was disciplined on the basis of a false charge in violation of his right to substantive due process, we are constrained to deny defendants' motion at this stage of the proceeding.

### Fifth and Fourteenth Amendment Right to Counsel

Plaintiff asserts that his right to counsel was violated by defendant Richard's and homicide detective Moore's allegedly custodial interrogation of him on July 9, 1991 concerning the near drowning of inmate Fulmore in the prison infirmary. (Amend. Cpt ¶ 1(b)) He contends that he "was isolated in a room" for forty-five minutes to an hour until defendant Richards and detective Moore interrogated him regarding the "alleged attempted murder" of Fulmore. (Pl. 10(J) St. ¶ 1 & Amend. Cpt ¶ 1(b)) However, there is no suggestion in plaintiff's papers that any injury resulted from the interrogation.[5]

■ Plaintiff had the right to the presence and assistance of counsel, absent a waiver, if he was subjected to *custodial* interrogation. Plaintiff was in custody as an inmate of DOCS, but custody for the purpose of triggering this right to counsel requires more. *See, e.g., United States v. Willoughby,* 860 F.2d 15, 23–24 (2d Cir.1988), *cert. denied,* 488

U.S. 1033, 109 S.Ct. 846, 102 L.Ed.2d 978 (1989).

Defendants have submitted no evidence with respect to this claim so we are forced to assume the truth of plaintiff's allegations. The claim may not be dismissed unless it is clear that plaintiff could prove no state of facts upon which he would be entitled any relief. Since the complaint is sufficiently general to permit plaintiff to prove that he was in "custody" when he was questioned, we may not dismiss the complaint on this record on the ground that the interrogation was not custodial.

■ We then are left with the question whether the claim may be dismissed on the ground that plaintiff was not injured by any custodial interrogation that may have occurred. Plainly there is no allegation of actual injury. Under *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), and *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986), however, plaintiff may be entitled to nominal damages if he established a constitutional violation. Accordingly, plaintiff's claim for compensatory damages on this claim is dismissed, but the defendants' motion as to this claim otherwise is denied.

### Alleged Deprivation of Property

■ Plaintiff alleges that on November 3, 1991, defendant Cotter searched plaintiff's cell and "confiscated" two pairs of women's underwear in violation of plaintiff's due process rights. (Amend. Cpt ¶ 2(b) & Pl. 10(J) St. ¶ 5) Plaintiff alleges further that his sneakers and eyeglasses were lost after a trip from the Central New York Psychiatric Facility back to Auburn on December 30, 1991 and that this too violated his due process rights. (Amend. Cpt ¶ 3) Plaintiff

---

4. *See Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam).

5. Adding to the ambiguity of this claim is the language of the amended complaint, which states that "plaintiff was never informed that ... [he] was a suspect of attempt[ed] murder." (Amend.

Cpt ¶ 1) There are two possible interpretations of this language. The first is that he was suspected of attempted murder but was not told. The second is that he was not told that he was a suspect because he was not a suspect. If the latter is correct, then the questioning of plaintiff was not custodial interrogation. Nevertheless, we must construe the amended complaint broadly.

moves for summary judgment. Defendants cross-move, arguing that loss of personal property fails to state a cause of action. (Def.Mem. 6–7)

Defendants are entitled to summary judgment dismissing plaintiff's property deprivation claim because no constitutional injury is alleged. New York's post-deprivation tort remedy provides all the process that is due, whether the deprivation of plaintiff's property was intentional or negligent. *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984) (intentional deprivation); *Parratt v. Taylor,* 451 U.S. 527, 543, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981) (negligent deprivation).

**Alleged Denial of Access to the Courts**

Plaintiff alleges that he was denied access to legal materials and legal assistance from February 13, 1992 to October 12, 1992 while in keeplock status. (Pl. 10(J) St. ¶ 14)

■ The Supreme Court has recognized a prisoner's constitutional right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821–22, 97 S.Ct. 1491, 1494–95, 52 L.Ed.2d 72 (1977). *Bounds* requires prison officials to provide adequate law libraries or assistance from persons trained in the law, *id.* at 828, 97 S.Ct. at 1498, and to furnish prisoners with basic supplies to render their access to the courts meaningful. *Id.* at 824–25, 97 S.Ct. at 1496–97. Plaintiff asserts that during the period in question he submitted requests for legal materials from the library and never received the materials, except on one occasion. (Amend. Cpt ¶ 10)

Defendants have attached to the affirmation of Assistant Attorney General Siegfried portions of alleged library records. (Siegfried Aff.Ex. A) There is no evidence submitted beyond the records attached. The records appear to indicate that materials were signed out in the name of plaintiff on four occasions: February 19, 1992, February 28, 1992, February 29, 1992 and March 1, 1992. (*Id.*) Defendants' papers, however, do not sufficiently authenticate the records. But even if authenticated, the records do not establish whether plaintiff ever received the materials or that his legal needs adequately were attended to. As defendants have failed to submit evidence sufficient to carry their burden under Rule 56, their motion is denied as to this claim.

**Alleged Assault by Defendant CO Lupo**

Plaintiff alleges that he was assaulted by CO Lupo on March 9, 1992 while "preparing to be searched" by Lupo (Amend. Cpt ¶ 5) and moves for summary judgment on this claim. CO Lupo submitted an affidavit denying that he used any physical force on plaintiff. (Lupo Aff. ¶ 2, 5)

■ If Lupo had cross-moved for summary judgment, the claim against him would have been dismissed because no genuine issue of material fact would exist given the absence of any sworn evidence from plaintiff on this allegation. It is unclear that Lupo has made such a motion. The notice of cross-motion and defendants' brief are sufficiently ambiguous as to whether defendants seek dismissal of this claim so as to leave open the possibility that plaintiff failed to submit an affidavit on this point in the belief that dismissal of this claim against Lupo was not sought at this time. In the circumstances, it would not be appropriate to grant summary judgment on this claim in this posture.

**Defendant Selsky's Immunity Defense**

Defendants seek summary judgment dismissing the claim in the original complaint against defendant Selsky on the ground of absolute immunity. This branch of defendants' motion must be denied in light of *Young v. Selsky,* 41 F.3d 47 (2d Cir.1994), in which the Second Circuit addressed and rejected an argument identical to defendants' argument in this case.

**Personal Involvement of Defendants Coughlin, Dann, Walker, Giambruno and Rosado**

Defendants argue that defendants Coughlin, Dann, Walker, Giambruno and Rosado had no personal involvement in the alleged unlawful conduct and therefore may not be held liable for any Section 1983 violation under the standard of *Monell v. Department*

*of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Even on a generous reading of the amended complaint, plaintiff alleges no facts indicating personal involvement of defendants Coughlin or Rosado in any of the alleged violations. Therefore, all claims are dismissed as to defendants Coughlin and Rosado.

Plaintiff alleges that defendants Dann, Walker and Giambruno had personal knowledge of the DOCS medical order that he be housed on a bottom gallery of the prison and yet ignored it. (Amend. Cpt ¶ 8(a)) Plaintiff appears to allege that Giambruno had knowledge also of the alleged denial of plaintiff's access to legal materials. (*Id.* ¶ 10) All claims therefore are dismissed against defendants Dann and Walker except for the Eighth Amendment allegation based the medical order to house plaintiff on a bottom tier. All claims are dismissed against defendant Giambruno except the Eighth Amendment claim based on the medical order and the claim of alleged denial of plaintiff's access to the courts.

**Conclusion**

Plaintiff's motion is denied in all respects. Defendants' cross-motion is granted to the extent of dismissing (a) all claims against Coughlin and Rosado, (b) all claims against Walker and Giambruno save the Eighth Amendment claim relating to housing plaintiff on the upper tier and, as to Giambruno, the claim relating to access to the courts, (c) all Eighth Amendment claims against the remaining defendants, except the claim relating to housing plaintiff on the upper tier, (d) the compensatory damage claim with respect to alleged deprivation of counsel, and (e) the property deprivation claims. It is denied in all other respects.

SO ORDERED.