Christopher A. JONES, Petitioner,

v.

E.K. McDANIEL, et al., Respondents.

No. 3:04–CV–0524–ECR–RAM.

United States District Court,
D. Nevada,

May 8, 2008.

Christopher A. Jones, Ely, NV, pro se.

Joseph W. Long, Nevada Attorney General's Office, Ely, NV, for Respondents.

## *ORDER*

EDWARD C. REED, JR., District Judge.

Petitioner Christopher Jones ("Petitioner"), a prisoner at Ely State Prison, seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, affording relief from sanctions imposed at two disciplinary hearings. He alleges that these hearings were conducted without due process. We begin by noting that this is a quite straightforward case. It is unfortunate that it has come this far.

### I. *Procedural Background*

On April 22, 2002, Sergeant Gilbert Cunningham charged Petitioner with violating Nevada Code of Penal Discipline regulations M–7 (unauthorized use of institutional supplies, tools, equipment or machinery), G–14 (failure to follow posted rules and regulations), MJ–29 (charging or collecting a fee as a writ writer), MJ–31 (unauthorized use of phone or mail), MJ–36 (attempt or conspiracy to commit a major violation), and G–20 (preparing, soliciting, or giving false or misleading information to or about a staff member and representing the statement as fact). The Court notes that the regulations at issue should have been filed with the Court and must be filed if they are to be cited and

relied upon in any further proceedings. The notice of charges was served on April 24, 2002. After a hearing on May 16, 2002, the M–7 and MJ–36 charges were dismissed. Petitioner was found guilty on all other charges. Petitioner was sanctioned with (1) 180 days of administrative segregation, (2) loss of telephone privileges for 30 days, (3) loss of canteen privileges, and (4) referral for loss of 59 days of statutory good time. Petitioner appealed the sanctions to the Warden, who denied the appeal on June 13, 2002.

On May 8, 2002, Officer Arthur Boynton charged Petitioner with violating regulations G–9 (abusive language or actions towards another person), MJ–25 (threats: issuing a threat, either verbally, by gesture, or in a written statement to or about any person), and MJ–31 (the unauthorized use of telephone or mail). After a hearing, also held on May 16, 2002, the G–9 charge was dismissed and Petitioner was found guilty on the other two charges. Petitioner was sanctioned with (1) 180 days of administrative segregation, (2) 30 days of loss telephone privileges, (3) 30 days of loss of canteen privileges, and (4) referral for loss of 30 days of statutory good time. Petitioner again appealed to the Warden, who denied the appeal on June 14, 2002.

On September 26, 2002, Petitioner filed a petition for writ of habeas corpus in Nevada District Court. Petitioner filed a motion to strike two of Respondents' exhibits on December 19, 2002, on the basis that the documents were not considered by the hearing officer at the disciplinary hearing. The Nevada District Court judge denied the motion, reasoning that the documents were relevant to the allegation that Sergeant Cunningham committed perjury even if they were not a part of the administrative record. The District Court judge denied the petition for writ of habeas corpus on December 4, 2003. (Doc. No. 16

(# 17).) Petitioner appealed, and the Nevada Supreme Court affirmed the trial court's decision on August 23, 2004. (Doc. No. 19 (# 17).)

Petitioner filed his petition for writ of habeas corpus in this Court on September 22, 2004. (## 5, 6.) Petitioner then filed a First Amended Petition for Writ of Habeas Corpus (## 22, 26) on May 9, 2006.

On June 16, 2006, Respondents filed a motion to dismiss (# 30) the First Amended Petition for Writ of Habeas Corpus, which the Court denied (# 43) on February 26, 2007. Over Petitioner's vigorous objection, which cited previous failures to meet court deadlines and a previous reprimand from the state trial court, this Court allowed (# 53) Respondents to file an untimely Answer (# 49).

It appears that neither the Nevada District Court nor the Nevada Supreme Court requested or reviewed a transcript of either of the disciplinary hearings that are at issue in this case.[1] On March 24, 2008, this Court ordered (# 52) "that within 30 days from the date of entry of this Order, Respondents shall file with the Court a transcript of the disciplinary hearings, the written report of Sergeant Cunningham on which the hearing officer relied, and any other evidence on which the hearing officer relied." This deadline has passed, and Respondents' counsel has failed to heed this Court's Order (# 52) or to respond to it in any way. Exercising our discretion, this Court will not enter an order to show cause why sanctions should not issue, but neither will it allow Respondents to supplement the present record when (1) Respondents' counsel asserts that the present record is "the relevant administrative and state court record" (Answer (# 49), p. 6), (2) counsel contends that the present record is sufficient to deny the writ, (3) fur-

---

1. Respondents' Answer states that transcripts could be obtained upon request.

ther delays are entirely unwarranted, and most importantly (4) there is no indication that anything new lurks in the evidence that counsel has failed to file.

Petitioner's First Amended Petition for Writ of Habeas Corpus states that the writ should be issued because:

(1) The state trial court violated due process and abused its discretion by upholding a double standard, allowing untimely filings on the part of Respondents.

(2) The state trial court violated due process and abused its discretion by declining to strike exhibits that were not a part of the administrative record.

(3) The state trial court was biased.

(4) The documents on which the administrative discipline was based were illegally obtained, depriving Petitioner of due process.

(5) The notice procedures for the disciplinary hearings were inadequate, depriving Petitioner of due process.

(6) The disciplinary hearing procedures were inadequate, depriving Petitioner of due process.

(7) Petitioner's conviction was not based on "some evidence."

## II. *Federal Habeas Corpus Standards*

■ 28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this Court's consideration of the petition in this case:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is an "unreasonable application" of clearly established law, as determined by the Supreme Court, only if the state court's application of Supreme Court's precedent is "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is "contrary to" clearly established federal law if it misstates or fails to identify the controlling Supreme Court precedent or if it reaches a different result in a case that is materially indistinguishable from a Supreme Court case. *Id.* at 405–07, 120 S.Ct. 1495. These standards of review "reflect the … general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the law as explicated by the Supreme Court." *Davis v. Kramer*, 167 F.3d 494, 500 (9th Cir. 1999), *vacated by* 528 U.S. 1133, 120 S.Ct. 1001, 145 L.Ed.2d 926 (2000).

Furthermore, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. *Scope of Due Process Protection in Prison Discipline Hearings*

■ When an inmate in state custody faces a disciplinary proceeding that may result in the loss of good-time credits, procedural due process requires that the inmate receive: "(1) advance written notice of the disciplinary charges; (2) an opportu-

nity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *see Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Wolff,* 418 U.S. at 566, 94 S.Ct. 2963.

 "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....'" *Hill,* 472 U.S. at 455, 105 S.Ct. 2768 (quoting *United States ex rel. Vajtauer v. Comm'r of Immigration,* 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560 (1927)).

 In *Sandin v. Conner,* the Supreme Court held that States may create liberty interests that are protected by the Due Process Clause, but "these interests will be generally limited to freedom from restraint which ... imposes *atypical and significant* hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (emphasis supplied). "Discipline by prison officials in response to a wide range of

misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485, 115 S.Ct. 2293. Segregated confinement falls within this "wide range," *id.* at 486, 115 S.Ct. 2293, as does the loss of phone and canteen privileges. Thus, the only disciplinary sanction that is at issue in this case is Petitioner's loss of statutory good time.

### IV. *The Second Hearing*[2]

The record documenting the second hearing consists of a Notice of Charges (Form I), a Summary of Hearing Officer's Inquiry and Disposition (Form II), and a Summary of Disciplinary Hearing (Form III). The Report of Violation section of the Notice of Charges states:

> On April 22, 2002 investigation was completed confirming inmate Christopher Jones # 50600 is using the United States Postal Service via Nevada State Bank to transfer funds to other inmates using a fictitious business name and location.

(Doc. No. 3 (# 17).) The Summary of Disciplinary Hearing form states:

> Sgt. Cunningham states that investigation was complete for C. Jones # 50600 that he used the United States Postal Service via Nevada State Bank to transfer funds to other inmates.

(Doc. No. 4 (# 17).) The Evidence Relied Upon section of the form states:

> Sgt. Cunningham's report is clear that C. Jones # 50600 did use [the] Postal Service and Nevada State Bank to transfer funds to other inmate [sic],— Evidence held by C.E.R.T.

(*Id.*) After the hearing, Petitioner was found guilty of violating G–14 (failure to

---

2. The two hearings at issue in this case were held on the same day before the same hearing officer. We refer to the hearing scheduled for 10:15 a.m. as the first hearing and the hearing scheduled for 10:30 a.m. as the second hearing. We discuss the second hearing first because it is the hearing primarily at issue in the petition.

follow posted rules and regulations), MJ–29 (charging or collecting a fee as a writ writer), MJ–31 (unauthorized use of phone or mail), and G–20 (preparing, soliciting, or giving false or misleading information to or about a staff member and representing the statement as fact). The Warden's memorandum denying Petitioner's administrative appeal states: "You admit that you arranged to have Mr. Rodriguez send funds to purchase typewriter ribbons to replace his personal ribbons used for the class action typing." (Memorandum dated June 13, 2002, filed as Doc. No. 7 (# 17).)

A memorandum from an accounting employee to the Warden of the Ely State Prison states the background facts much more fully than anything else that has been filed with the Court:

> On February 14, 2002, I received from Bank of America, correspondence that had been sent into the NDOC lockbox in Las Vegas. I came across a letter from Nevada State Bank which contained an inmate deposit coupon and a letter from inmate Christopher A. Jones # 50600 instructing them to process a check payable to inmate Fernando Rodriguez # 51052, in the amount of $35.00. This request to the bank was returned due to incomplete paperwork. On December 11, 2001, one lockbox deposit for $20.00 posted to inmate Fernando Rodriguez's account, which was sent from Christopher Jones (sender's name on deposit coupon read Big Cee's Bar–B–Q). I am enclosing copies of documents I received in the mail from Bank of America pertaining to this incident along with a copy of the prior deposit posted to Fernando Rodriguez's account.

(Doc. No. 1 (# 17).) This memorandum was one of two documents that was the subject of Petitioner's motion to strike in the state trial court. The Court notes that the memorandum was apparently not before the hearing officer at the disciplinary hearing, although it is a part of the record that was before the state courts.

■ MJ–29 prohibits "[c]harging or collecting a fee or favors for services as a counsel substitute, legal assistant or 'writ writer.'" (Answer (# 49), p. 22.) The Nevada District Court and the Nevada Supreme Court both emphasized that it was undisputed that Petitioner had sent the letter to the bank. The Nevada Supreme Court also stated: "Sgt. Cunningham initiated an investigation, and his report concluded that Jones transferred money to inmate Rodriguez." (Order of Affirmance, *Jones v. McDaniel*, No. 42707, at 6, 120 Nev. 1255, 131 P.3d 615 (Nv.S.Ct. Aug. 23, 2004), filed as Doc. No. 19 (# 17).) However, neither the Nevada District Court nor the Nevada Supreme Court commented on the fact that there is *no evidence* in this record that Petitioner charged or collected a fee or favors for his services, nor any evidence that Petitioner in fact acted as a writ writer. In this Court, Respondents' counsel affirmatively acknowledges that Petitioner did not collect a fee or favors for his services, arguing instead that "it is reasonable to contemplate that if MJ–29 prohibits receiving payments for legal services, making of such payment would be similarly proscribed." (Answer (# 49), p. 22.) Counsel's terse argument analogizes to the United States Supreme Court's precedent relevant to conduct "unbecoming an officer and gentleman."[3] The argument appears to be that MJ–29 is (1) vague, (2) this vagueness is permissible because prison discipline, like military discipline, is strict, and (3) Petitioner violated MJ–29, again because prison discipline is strict. MJ–29, however, is not at all vague or ambiguous. The factual allegation was that Petitioner paid funds to another inmate, not that he

---

**3.** *See Parker v. Levy,* 417 U.S. 733, 756–57, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

received them. The mere fact that this clandestine activity had something to do with a class action does not suggest Petitioner was a paid writ writer. Again, there is no evidence in this record supporting Petitioner's conviction for violation of MJ–29.

 Nor is this the only problem with the second hearing. The "written statement" requirement outlined in *Wolff* is not a ritual that magically renders a disciplinary decision constitutional. Rather, "*Wolff* requires a disciplinary board to explain the evidence relied upon," *Hill,* 472 U.S. at 455, 105 S.Ct. 2768, such that it is at very least possible to discern the factual basis of the conviction. Similarly, the "some evidence" standard cannot be met if none of the evidence cited *supports* the stated facts that are the basis of the conviction. *Id.* at 454, 105 S.Ct. 2768. With respect to the violations of G–14 (failure to follow posted rules and regulations) and G–20 (preparing, soliciting, or giving false or misleading information to or about a staff member and representing the statement as fact), this Court can only guess as to why Petitioner was convicted on these charges.

Petitioner was entitled to know the factual basis for his conviction on each charge, and due process required that the factual basis be incorporated into the hearing officer's written statement. Respondents now assert that Petitioner knowingly violated regulations prohibiting the transfer of funds from one inmate to another without prior approval. It is impossible to tell from this record, however, if this was the basis for the G–14 violation since these regulations are not cited in the administrative record; it appears more likely that the basis of the G–14 violation was the purported MJ–29 violation. The basis for the G–20 violation is also omitted from the written statement, and no facts are appar-ent in this record that indicate that Petitioner violated this regulation.

 Finally, although there is "play in the joints of the Due Process Clause," *Wolff,* 418 U.S. at 567, 94 S.Ct. 2963, generally, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566, 94 S.Ct. 2963. Petitioner requested Sergeant Cunningham as a witness but the request was denied for reasons unrelated to prison safety and security. *See id.* The hearing officer based his decision exclusively on Sergeant Cunningham's report and concluded that Sergeant Cunningham's testimony would be redundant. The report was not provided to Petitioner, nor was the letter itself considered or produced at the hearing. The Nevada District Court noted that "Respondent fails to account for why the evidence was not provided to Petitioner," but found that Petitioner suffered no prejudice because Petitioner did not deny that he had sent the letter. (Order Denying Petition for Writ of Habeas Corpus, *Jones v. McDaniel,* Case No. HC–0209014, at 8 (7th Nv.Dist. Ct. Dec. 4, 2003), filed as Doc. No. 16 (# 17).) The Nevada Supreme Court concluded that the decision not to call Sergeant Cunningham was within the hearing officer's broad discretion. This Court cannot agree. Where there is a lack of evidence to support a conviction, the hearing officer goes well beyond maintaining "reasonable limits" on the scope of the hearing when he or she asserts redundance and declines to consider both the testimony of the charging officer and the documentary evidence on which the charges are based. *See Wolff,* 418 U.S. at 566, 94 S.Ct. 2963.

The Nevada Supreme Court's affirmance of the Nevada District Court's decision is an unreasonable application of *Wolff*

and *Hill.* *See* 28 U.S.C. § 2254(d)(1). Accordingly, Respondents must either hold a new hearing or reinstate Petitioner's statutory time. That said, the Court specifically finds that grounds 1 through 5 in the First Amended Petition for Writ of Habeas Corpus are not meritorious, and that grounds 6 and 7 are only meritorious to the extent that this Order has so found.

## V. *The First Hearing*

In brief, the Report of Violation describing the incident at issue in the first hearing states that Petitioner sent an abusive and threatening letter that was deliberately mis-addressed such that it was returned to the prison and read by prison staff. Although the letter was apparently not considered at the hearing, the letter has been filed with the Court, and it is indeed a foul and threatening rant addressed to the prison's staff. After the disciplinary hearing, Petitioner was convicted of violating MJ–25 (threats: issuing a threat, either verbally, by gesture or in a written statement to or about any person), and MJ–31 (the unauthorized use of telephone or mail).

The majority of Petitioner's arguments are devoted to the already discussed second hearing, and the arguments pertaining to the first hearing are not a model of clarity. Petitioner's primary argument appears to be that the letter was obtained and read by prison authorities in violation of the prison's censorship protocol. It is

not clear to the Court that this is the case. Even if it is, the Nevada Supreme Court's affirmance of the conviction despite potential violations of the censorship protocol was not "a decision that was contrary to, or ... an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

■ Turning to Petitioner's various other arguments, the general allegation that the hearing officer was biased appears to be relevant to the first hearing.[4] Here, Petitioner must overcome not one but two presumptions. First, Petitioner has submitted no evidence that would overcome the presumption of integrity in the administrative and court proceedings related to this case. *See generally Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir.1999). Second, the Nevada Supreme Court's factual finding that the record does not support a finding of bias is also presumed to be correct. This presumption must be rebutted by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and Petitioner has made nothing close to such a showing.

■ Petitioner was given adequate notice of the charges and their basis, and this Court finds no prejudice to the extent that Petitioner argues that he should have been shown the mis-addressed letter at the first hearing.[5] Nor do we find that the convic-

---

4. Petitioner cites as evidence of bias (1) the general structure of the prison discipline system, including having hearings before a single hearing officer rather than a committee, (2) his conviction for violation of MJ–29, and (3) the hearing officer's alleged statement that he "had no choice."

5. Petitioner relies upon *Grillo v. Coughlin,* 31 F.3d 53 (2d Cir.1994), as persuasive authority suggesting that he had a *per se* due process right to see the letter at the disciplinary hearing. *See also Young v. Kann,* 926 F.2d 1396,

1400–02 (3d Cir.1991) (requiring security reasons for not producing evidence). *But cf. Baxter v. Palmigiano,* 425 U.S. 308, 322–23, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). However, no *per se* right exists, *Wolff,* 418 U.S. at 566–72, 94 S.Ct. 2963, and Petitioner misreads *Grillo.* In *Grillo,* the prisoner alleged that the evidence on which his conviction was based had been tampered with, and the evidence that was before the hearing officer was in fact different from the evidence that had been shown to the prisoner. 31 F.3d at 56. Petitioner does not contend that he did not

tions resulting from this hearing were based on insufficient evidence, nor that MJ–31 is unconstitutionally vague or overbroad.

In sum, none of Petitioner's arguments pertaining to the first hearing are meritorious.

## VI. *Conclusion*

For the reasons set forth above, *IT IS HEREBY ORDERED* that

1. The First Amended Petition for Writ of Habeas Corpus (## 22, 26) is *GRANTED* with respect to the convictions involving the letter to the Nevada State Bank, and *DENIED* with respect to the convictions related to the deliberately misaddressed letter containing threats to prison staff,

2. Respondents are *ORDERED* to either reinstate Petitioner's statutory good time with respect to the convictions involving the letter to the Nevada State Bank, or hold a new hearing within 60 days from the date of entry of this order.

3. The clerk shall enter judgment for Petitioner.

send the misaddressed letter, and no situation remotely analogous to *Grillo* exists here.